COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| L.V., | § | No. 08-12-00252-CV |
| Appellant, | § | Appeal from |
| v. | § | 143rd District Court |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, | § | of Ward County, Texas |
| Appellee. | § | (TC # 11-07-22,655-CVW) |

**O P I N I O N**

L.V. is appealing from a judgment which terminated the parental rights of his daughter to her biological child, C.H., Jr. (C.H.) and placed the child in the home of the child's maternal grandmother.[1]  We affirm.

**FACTUAL SUMMARY**

C.H. was born two months premature on February 10, 2011 and was not released from the hospital until late April 2011.  Over the course of the next three months, the child and his parents, C.H. and C.H., Sr. (hereinafter referred to as Mother and Father) lived with the couple's parents at various times.  On July 21, 2011, Father was changing the baby's diaper when he heard one of the baby's legs "pop."  He explained that the leg simply popped when he was holding the child by the ankles with one hand and lifting him while he changed the diaper.  Mother, Father, the paternal grandparents, and Father's sister were present when the injury

---

[1]  Appeals from a judgment terminating parental rights are accelerated.  *See* TEX.R.APP.P. 28.4.  The Texas Supreme Court has determined that an appellate court should dispose of these appeals within 180 days after the notice of appeal is filed.  TEX.R.JUD'L ADMIN. 6.2(a).  The Court appreciates the efforts of counsel for Appellant and the Texas Department of Family and Protective Services in filing their respective briefs in a timely manner in this super-accelerated format.

occurred. They took C.H. to Ward Memorial Hospital and it was determined that he had a spiral break of his left femur. X-rays showed that the child had three partially-healed broken ribs and he had also suffered a spiral fracture of his other leg. Neither parent knew how these other bones had been broken or who caused the injuries. C.H. was transferred from Ward Memorial Hospital to Covenant Medical Center in Lubbock. According to Dr. Patterson at Covenant, all of the injuries appeared to be non-accidental. The Department initiated an investigation because the parents' explanation about the broken leg did not comport with the nature of the injury. On July 29, 2011, the Department filed a petition to terminate the parental rights of both Mother and Father. The Department also requested that it be appointed managing conservator of the child.

The petition alleged that Mother and Father: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; (3) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment or parental rights; (4) constructively abandoned the child; and (5) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child. The child's maternal grandmother, C.A., and her husband, A.A., intervened in the case and sought to be named joint managing conservators, or alternatively, possessory conservators of the child. The child's maternal grandfather, L.V., and his wife K.E., also intervened and requested that they be named joint managing conservators.

Shelby Couch, the Department's caseworker assigned to this case, testified that when the child was brought into the hospital he was dirty as were his parents. During the course of the Department's investigation, Couch learned that Mother had no prenatal care despite a family

history of premature births.  Further, Mother and Father did not take C.H. to the doctor for his vaccinations due when he was four months of age.  Additionally, C.H. had missed five of his weekly physical therapy appointments.  At the conclusion of the investigation, the Department was unable to determine whether Mother had committed the physical abuse or neglect, but it found that there was reason to believe Father had committed physical abuse and neglect of the child.  The Department cleared the maternal grandmother, C.A., of any wrongdoing.  After making these determinations, the Department offered services to the parents and Mother agreed to schedule the child's missed appointments with his doctors and notify the case worker when she had taken care of that task.  Mother did not comply.  In August 2011, the child was removed from the home and the Department was appointed temporary managing conservator of C.H.  A service plan was created for each parent setting forth the steps necessary to achieve reunification with the child.  Both parents were required to undergo a psychosocial evaluation, counseling, and parenting classes.  Both parents completed the required parenting classes and a psychosocial evaluation but they did not complete MHMR testing.  Mother attended two of the required counseling sessions and Father attended one session.  Both parents testified that that the counselor told them that no additional sessions were required but the counselor reported to the Department that the parents had failed to schedule the next appointment and never completed the counseling.

While this case was pending, Mother gave birth to a daughter, L.H., who was born prematurely.  As a result of the pending case involving C.H., L.H. was removed from the care of Mother and Father and placed with L.V. but a permanency hearing had not yet occurred.  Following a bench trial, the court found that the Department had established by clear and convincing evidence the first, second, fourth, and fifth grounds alleged against Mother and

Father, and that termination of their parental rights was in the child's best interest. The court also found that appointment of either C.A. or L.V. as permanent managing conservator is not in the child's best interest. The trial court appointed the Department as the permanent managing conservator of C.H. and placed him with his maternal grandmother, C.A. The court further ordered that the maternal grandfather, L.V., could have visitation by agreement. Mother, Father, and L.V. each filed notice of appeal.[2]

## SECTION 162.302(E)

In his first issue, L.V. argues that the trial court misapplied the law by failing to keep the two siblings, C.H. and L.H., together when making the placement determination. L.V. relies on Section 162.302(e) of the Texas Family Code[3] and 40 TEX.ADMIN.CODE § 700.1309 to support his argument that public policy requires that siblings be placed together.[4] Section 162.302(e) provides that:

> It is the intent of the legislature that the department in providing adoption services, when it is in the children's best interest, keep siblings together and whenever possible place siblings in the same adoptive home.

---

[2] In an opinion and judgment issued on the same date as the opinion and judgment issued in this case, we affirmed the trial court's judgment terminating Mother's parental rights. *See C.H. v. Texas Department of Family and Protective Services*, No. 08-12-00250-CV (Tex.App.--El Paso Oct. 17, 2012). Likewise, in a separate opinion and judgment, we affirmed the trial court's judgment terminating Father's parental rights. *See C.H. v. Texas Department of Family and Protective Services*, No. 08-12-00251-CV (Tex.App.--El Paso Oct. 17, 2012).

[3] TEX.FAM.CODE ANN. § 162.302(e)(West 2008).

[4] L.V. relies only upon the statutes that we have addressed. We do recognize that there is long standing authority that favors keeping siblings together in the same household absent clear and compelling reasons for separation. *See, e.g., Coleman v. Coleman,* 109 S.W.3d 108, 112 (Tex.App.--Austin 2003, no pet.); *O. v. P.,* 560 S.W.2d 122, 127 (Tex.Civ.App.--Fort Worth 1977, no writ); *Autry v. Autry*, 350 S.W.2d 233, 236 (Tex.Civ.App.--El Paso 1961, no writ); *see also* TEX.FAM.CODE ANN. § 153.251(c)(West 2008)("It is preferable for all children in a family to be together during periods of possession."). The separation of children is only one of many factors to consider in determining the best interests of the children. *Coleman,* 109 S.W.3d at 113; *Ditraglia v. Romano,* 33 S.W.3d 886, 890 (Tex.App.--Austin 2000, no pet.). Other factors include "[t]he age of the children, the location of the parents, the present and future emotional and physical needs of the children, the stability of each parent's home, and the present and future emotional and physical danger to the children." *Coleman,* 109 S.W.3d at 113. Our resolution of this issue would not change if L.V. had raised the common law arguments.

Section 162.302 is found in a Subchapter of the Family Code addressing adoption services by the Department of Protective and Regulatory Services and pertains to an adoption assistance program. *See* TEX.FAM.CODE ANN. § 162.302. As acknowledged by L.V., the statute is applicable when both siblings are being placed for adoption. *See In the Interest of D.R.L.M.*, 84 S.W.3d 281, 304 (Tex.App.--Fort Worth 2002, pet. denied). Placement of L.H. was not at issue in this case. At the time of trial, L.H. had not been permanently placed with L.V. and there is no evidence in the record that permanent placement or adoption has since occurred. Even assuming that Section 162.302(e) is applicable here, the legislative intent set forth in the statute expressly yields to the best interest requirement. *See* TEX. FAM.CODE ANN. § 162.302(e); *In re D.R.L.M.*, 84 S.W.3d at 304-07.

L.V. also relies on the Texas Administrative Code in making his argument that the court failed to consider the public policy requiring that siblings be kept together. *See* 40 TEX.ADMIN.CODE § 700.1309. Section 700.1309 provides as follows:

> § 700.1309. **What factors does DFPS consider when selecting the most appropriate living arrangement for a child?**
>
> As mandated by § 475 of Title IV-E of the Social Security Act, DFPS must place a child in the least restrictive (most family-like) and most appropriate setting available, and in close proximity to the parents' home when the child's permanency goal is reunification, consistent with the best interest and special needs of the child. When determining whether a placement is consistent with the best interest and special needs of a child, DFPS considers the following factors:
>
> (1) First and foremost, a child's placement must be safe;
>
> (2) Placement with a relative or other person with whom the child has a long-standing and significant relationship is generally preferred over placement with a non-related caregiver, provided the relative or other person can provide a safe and appropriate home;
>
> (3) Siblings removed from their home should be placed together unless such placement would be contrary to the safety or well-being of any of the siblings;

(4) Consideration must be given to the appropriateness of the child's current educational setting and the proximity of the placement to the school in which the child is enrolled at the time of placement;

(5) The placement must be able to meet the physical and emotional needs of the child, including any special needs that the child may have, taking into consideration any available support services that might assist the placement in meeting the child's needs; and

(6) Consideration must be given to the child's desires and needs for a loving and permanent home.

This section of TAC, like Section 162.302 of the Family Code, makes the child's safety and best interests of the child the paramount concern when determining placement. Accordingly, we find that these provisions did not require the trial court to place C.H. with his sibling. Issue One is overruled.

## CONSERVATORSHIP

In Issue Two, L.V. contends that the trial court abused its discretion by appointing the Department as the sole managing conservator of C.H. and by placing the child with C.A. He challenges the legal and factual sufficiency supporting the determination of conservatorship.

*Standards of Review and Applicable Law*

Under Section 153.002, the primary consideration in determining issues of conservatorship and possession of and access to the child is always the child's best interest. TEX.FAM.CODE ANN. § 153.002 (West 2008); *In the Interest of J.A.J.*, 243 S.W.3d 611, 614 (Tex. 2007). If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court is required to appoint a suitable, competent adult, the Department of Protective and Regulatory Services, a licensed child-placing agency, or an authorized agency as managing conservator of the child. TEX.FAM.CODE ANN. § 161.207(a)(West 2008).

The trial court's appointment of a managing conservator under Section 161.207 is based on a preponderance of the evidence. *See* TEX.FAM.CODE ANN. § 105.005 (West 2008)("Except as otherwise provided by this title, the court's findings shall be based on a preponderance of the evidence."). The trial court has wide latitude in determining the best interests of a minor child. *In the Interest of W.M.*, 172 S.W.3d 718, 724 (Tex.App.--Fort Worth 2005, no pet). We review the trial court's decision for an abuse of discretion and will not reverse unless the decision is arbitrary and unreasonable. *See In re J.A.J.*, 243 S.W.3d at 616. In conducting our review of the court's decision, we engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion? *In re J.A.H.*, 311 S.W.3d 536, 540 (Tex.App.--El Paso 2009, no pet.). The traditional sufficiency standards are employed in answering the first question. *Id.* Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision. *Id.* In other words, we must conclude that the ruling was neither arbitrary nor unreasonable. *Id.*

In considering a legal sufficiency or "no evidence" point, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Even if evidence is undisputed, it is the province of the trier of fact to draw from it whatever inferences it wishes so long as more than one inference is possible. *Id*. at 821. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id*. We are also mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id*. at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id*. at 820. In every circumstance in which a reasonable trier of fact could resolve

conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id*. at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. *Id.* at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *Id*. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id*. at 827.

A factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re J.A.H.*, 311 S.W.3d at 541, *citing In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The reviewing court cannot substitute its conclusions for those of the jury. *In re J.A.H.*, 311 S.W.3d at 541. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Id.*

The Supreme Court has set forth a list of non-exclusive factors which can be used to determine a child's best interests. *In the Interest of S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8 (Tex.App.--El Paso 2012, no pet. h.), *citing Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The determination of a child's best interest does not require proof of any unique set of factors, and it does not limit proof to any specific factors. *Id*. Under *Holley*, in reviewing the sufficiency of the evidence to support a best-interest finding, courts may consider (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody in promoting the best interest of the child, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by the

- 8 -

individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *In re S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8, *citing Holley*, 544 S.W.2d at 371-72.

1. *The desires of the child.* At the time of trial, C.H. was only eighteen months of age and there is no evidence that he could articulate his desires.

2. *The present and future physical and emotional needs of the child.* C.H. has hydroencephalitis and is a special needs child. As a result of his premature birth, he is behind developmentally and is currently receiving physical therapy and speech therapy. He will need physical therapy on an ongoing basis. He will also need additional medical care. Simply put, C.H. has significant present and future physical needs.

3. *The present and future emotional and physical danger to the child.* Mother testified that C.A.'s home was not safe for C.H. because the floors were uneven, the roof leaked, and the yard had a lot of junk cars and metal. Mother claimed that C.A. and her husband did not feed their pets and had starved two horses. C.A. had also been physically aggressive with her thirteen-year-old son and he had hit her in the face. Mother had also seen C.A. and her husband yell at each other and on one occasion C.A. threw a fax machine at him. Mother admitted that she had initially requested that C.H. be placed with C.A. Mother also testified that even though C.A. had formed a bond with C.H. she would not be allowed to visit the child if he were placed with L.V.

4. *The parental abilities of the persons seeking custody in promoting the best interest of the child.* C.A. has a bond with C.H. because the family lived with C.A. for a period of time and she had maintained contact with C.H. after he was removed from his parents' care. C.A. has

participated in C.H.'s Early Child Intervention classes. C.A.'s husband has experience caring for small children because he ran a day care in the past. L.V. had visited C.H. only a few times since he had been born and L.V.'s wife had never met him. L.V.'s wife has a Master's degree in special education and there are two special needs children in L.V.'s home.

5. *Available assistance programs.* No evidence was presented regarding assistance programs available to C.A. or L.V.

6. *The plans for the child by the individuals or agency seeking custody.* The Department requested that it be named managing conservator of C.H. so that C.A. could arrange to adopt him.

7. *The stability of the home or proposed placement.* There is evidence that C.A. is a Canadian citizen. While L.V.'s attorney questioned C.A.'s husband, A.A., about her immigration status and suggested that C.A. did not have a permanent green card, there is no evidence in the record to support that assertion. In fact, the home study reflects that C.A. has resident status. C.A. is not employed but A.A. is employed and their financial situation is stable. They would not need any financial assistance to care for C.H. and he would be the only special needs child in the home. C.A. and her husband have been married since February of 2002 and they have a stable relationship. At the time of trial, L.V. and his wife, K.E., had only been married a few months. L.V. testified that his financial condition had improved since the home study was completed and they could care for C.H. He also admitted, however, that he was behind on his child support and had not made a payment "in some time."

8. *Acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate.* The eighth factor is inapplicable in this appeal.

9.  *Any excuse for the parent's acts or omissions*.  The ninth factor is inapplicable in this appeal.

Having reviewed all of the evidence under the standard for legal sufficiency, we conclude that a reasonable trier of fact could have found that appointment of the Department as managing conservator and placement of the child with C.A. is in the best interest of the child.  We find no abuse of discretion in the appointment of the Department as the managing conservator of the child or by placing C.H. with his maternal grandmother.

We have also reviewed all of the evidence under the factual sufficiency standard.  The trial court had before it conflicting evidence and diametrically opposed points of view regarding the best interest of the child.  The trial court's finding on the best interest issue is not so against the great weight and preponderance of the evidence as to be manifestly unjust.  We conclude that the trial court's decision is not arbitrary or unreasonable.  We overrule Issue Two and affirm the judgment appointing the Department as managing conservator of the child.


October 17, 2012                                     _____
                                                    ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.