COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| C.H., | § | No. 08-12-00250-CV |
| Appellant, | § | Appeal from |
| v. | § | 143rd District Court |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, | § | of Ward County, Texas |
| Appellee. | § | (TC # 11-07-22,655-CVW) |
| | § | |

**O P I N I O N**

C.H. (Mother) is appealing from a judgment terminating her parental rights to her biological child, C.H., Jr. (C.H.)[1] We affirm.

**FACTUAL SUMMARY**

C.H. was born two months premature in February of 2011 and was not released from the hospital until late April 2011. Over the course of the next three months, Mother, Father, and C.H. lived with both maternal and paternal grandparents at various times. On July 21, 2011, C.H. Sr. (Father) was changing the baby's diaper when he heard one of the baby's legs "pop." He explained that the leg simply popped when he was holding the child by the ankles with one hand and lifting him while he changed the diaper. Mother, Father, the paternal grandparents, and Father's sister were present when the injury occurred. They took C.H. to Ward Memorial Hospital and it was determined that he had a spiral break of his left femur. X-rays showed that

---

[1] Appeals from a judgment terminating parental rights are accelerated. *See* TEX.R.APP.P. 28.4. The Texas Supreme Court has determined that an appellate court should dispose of these appeals within 180 days after the notice of appeal is filed. TEX.R.JUD'L ADMIN. 6.2(a). The Court appreciates the efforts of counsel for Appellant and the Texas Department of Family and Protective Services in filing their respective briefs in a timely manner in this super-accelerated format.

the child had three partially-healed broken ribs and he had also suffered a spiral fracture of his other leg. Neither parent knew how these other bones had been broken or who caused the injuries. C.H. was transferred from Ward Memorial Hospital to Covenant Medical Center in Lubbock. According to Dr. Patterson at Covenant, all of the injuries appeared to be non-accidental. The Department initiated an investigation because the parents' explanation about the broken leg did not comport with the nature of the injury. On July 29, 2011, the Department filed a petition to terminate the parental rights of both Mother and Father. The Department also requested that it be appointed managing conservator of the child.

The petition alleged that Mother: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; (3) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment or parental rights; (4) constructively abandoned the child; and (5) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child. The child's maternal grandmother, C.A., and her husband, A.A., intervened in the case and sought to be named joint managing conservators, or alternatively, possessory conservators of the child. The child's maternal grandfather, L.V., and his wife K.E., also intervened and requested that they be named joint managing conservators.

Shelby Couch, the Department's caseworker assigned to this case, testified that when the child was brought into the hospital he was dirty as were his parents. During the course of the Department's investigation, Couch learned that Mother had no prenatal care despite a family history of premature births. Further, Mother and Father did not take C.H. to the doctor for his

vaccinations due when he was four months of age. Additionally, C.H. had missed five of his weekly physical therapy appointments. At the conclusion of the investigation, the Department was unable to determine whether Mother had committed physical abuse or neglect, but it found that there was reason to believe Father had committed physical abuse and neglect of the child. The Department cleared the maternal grandmother, C.A., of any wrongdoing. After making these determinations, the Department offered services to the parents and Mother agreed to schedule the child's missed appointments with his doctors and notify the case worker when she had taken care of that task. Mother did not comply. In August 2011, the child was removed from the home and the Department was appointed temporary managing conservator of C.H. A service plan was created for each parent setting forth the steps necessary to achieve reunification with the child. Both parents were required to undergo a psychosocial evaluation, counseling, and parenting classes. Mother completed the required parenting classes and a psychosocial evaluation but she did not complete MHMR testing. Mother attended two of the required counseling sessions and Father attended one session. Both parents testified that that the counselor told them that no additional sessions were required but the counselor reported to the Department that the parents had failed to schedule the next appointment and never completed the counseling.

Following a bench trial, the court found that the Department had established the first, second, fourth, and fifth grounds by clear and convincing evidence, and that termination was in the child's best interest. The court appointed the Department as the permanent managing conservator of C.H. and placed him with his maternal grandmother, C.A. The court further ordered that the maternal grandfather, L.V., could have visitation by agreement. Mother, Father,

and L.V. each filed notice of appeal.[2]

## GROUNDS FOR TERMINATION

In Issue One, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's findings related to the grounds for termination. A court may order termination of the parent-child relationship if the court finds by clear and convincing evidence one of the grounds listed under Section 161.001(1) of the Texas Family Code and that termination is in the best interest of the child. TEX.FAM.CODE ANN. § 161.001 (West Supp. 2012); *In re J. L.,* 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX.FAM.CODE ANN. § 101.007 (West 2008). Due process requires the application of the clear and convincing evidence standard of proof in parental termination cases. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002).

### *Standards of Review*

In conducting a legal sufficiency review in a parental termination case, the reviewing court should consider all the evidence in the light most favorable to the challenged finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005); *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the fact finder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *In re J.P.B.*, 180 S.W.3d at 573. A corollary

---

[2] In an opinion and judgment issued on the same date as the opinion and judgment issued in this case, we affirmed the trial court's judgment terminating Father's parental rights. *See C.H. v. Texas Department of Family and Protective Services*, No. 08-12-00251-CV (Tex.App.--El Paso Oct. 17, 2012). Likewise, in a separate opinion and judgment, we affirmed the trial court's judgment placing the child with C.A. *See L.V. v. Texas Department of Family and Protective Services*, No. 08-12-00252-CV (Tex.App.--El Paso Oct. 17, 2012).

to this requirement is that a court should disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* Therefore, in conducting a legal sufficiency review in a parental termination case, we must consider all of the evidence, not just that which favors the verdict. *Id.*; *see City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005). An appellate court must defer to the fact finder's determinations on credibility so long as those determinations are not themselves unreasonable. *In re J.P.B.*, 180 S.W.3d at 573; *Southwestern Bell Telephone Company v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004).

In reviewing termination findings for factual sufficiency, a court of appeals must give due deference to the fact finder's findings and should not supplant the fact finder's determination judgment with its own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The court should inquire whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the allegations. *Id.* The reviewing court must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* In applying this standard, an appellate court's review must not be so rigorous that the only factfindings that could withstand review are those established beyond a

reasonable doubt. *H.R.M.*, 209 S.W.3d at 108. A court of appeals should detail in its opinion why it has concluded that a reasonable fact finder could not have credited disputed evidence in favor of the finding. *In re J.F.C.*, 96 S.W.3d at 266-67.

*Section 161.001(1)(D) - Environmental Endangerment*

The trial court found that Mother knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *See* TEX.FAM.CODE ANN. § 161.001(1)(D). This section requires proof of endangerment which means to expose to loss or injury, or to jeopardize a child's emotional or physical health. *Castaneda v. Texas Department of Protective and Regulatory Services*, 148 S.W.3d 509, 521-22 (Tex.App.--El Paso 2004, pet. denied), *citing Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). While endangerment means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child suffer actual injury. *Castaneda*, 148 S.W.3d at 522; *Doyle v. Texas Department of Protective and Regulatory Services*, 16 S.W.3d 390, 394 (Tex.App.--El Paso 2000, pet. denied).

Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Castaneda*, 148 S.W.3d at 522. Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under Subsection D. *Id.*; *see In re W.S.*, 899 S.W.2d 772, 776 (Tex.App.--Fort Worth 1995, no writ) ("environment" refers to the acceptability of living conditions, as well as a parent's conduct in the home). A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *See In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex.App.--Fort Worth 2009,

no pet.); *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex.App.--Houston [14th Dist.] 2005, no pet.). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under subsection (D). *In re M.R.J.M.*, 280 S.W.3d at 502. The fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d at 502.

We will first examine the evidence for legal sufficiency. Taken in the light most favorable to the challenged finding, the evidence shows that Mother failed to obtain any prenatal care and C.H. was born two months premature in January of 2011. Following C.H.'s release from the hospital in late April 2011, Mother and Father failed to take him for his vaccinations due at four months of age. C.H. is a special needs child because he has hydroencephalitis. As a result of his premature birth, he is behind developmentally and requires physical therapy on an ongoing basis. Mother and Father also failed to take C.H. to five of his weekly physical therapy appointments during June and July of 2011. Mother and Father took C.H. to the hospital in July 2011 and it was determined that he had suffered a non-accidental spiral break of his leg. Both Mother and Father insisted that they simply heard the leg "pop" while Father was changing C.H.'s diaper. Radiological studies showed that he had previously suffered broken ribs and a spiral break of the other leg and these breaks were in various stages of healing. C.H. underwent testing to determine whether he had brittle bone disease or any condition that would have caused unusual fragility but that had been ruled out.[3] C.H. has not had any broken bones while he has been in foster care. Both Mother and Father denied any knowledge of these other injuries and

---

[3] The reporter's record reflects that the caseworker testified that C.H. underwent testing to determine whether he had any genetic disease or condition that would have caused unusual "fertility" but it is apparent from the context that the witness was discussing the fragility of the child's bones.

did not know how they had occurred. The trial court was not required to believe Mother's testimony that she did not know C.H. had sustained these injuries. One reasonable inference from the evidence is that Mother did not take C.H. to the doctor for vaccinations and to physical therapy because she knew that he had these injuries and feared that they would be discovered. Even if the trial court believed Mother's testimony that she did not have knowledge of C.H.'s injuries, it is undisputed that she did not take him to his doctor's appointment for vaccinations or to physical therapy for an entire month. We conclude that a reasonable trier of fact could have formed a firm belief or conviction that Mother knowingly endangered C.H.'s physical health.

We have also reviewed the evidence for factual sufficiency. Mother has not identified any disputed evidence that a reasonable fact finder could not have credited in favor of the finding. As we have already noted, the trial court was not required to believe Mother's testimony that she was unaware of the injuries and did not know how they occurred. Mother and Father stated they did not have transportation to take the child to his weekly therapy appointments. Mother acknowledged that C.H. was on Medicaid and she knew that Medicaid provides transportation for people to go to their doctor's appointments, but she claimed that they were unable to use the Medicaid transportation system because her request for a food voucher while C.H. was in the hospital had been denied. The caseworker, Shelby Couch, had worked for Medicaid for eight years and she contradicted Mother's testimony about the Medicaid transportation system. According to Couch, if a person qualified for Medicaid then the transportation services would be available to that person. Further, an adult who is not covered by Medicaid can use the transportation services to take a minor who is covered to a doctor's appointment. It was not unreasonable for the trial court to infer that Mother and Father failed to take C.H. to his medical appointments because they knew he had suffered the broken bones and

feared the injuries would be discovered by the medical personnel. We find the evidence factually sufficient to support the finding that Mother knowingly endangered C.H.'s physical health.

Having found the evidence both legally and factually sufficient to support termination based on Section 161.001(1)(D), we will not address the trial court's findings related to Subsections (E), (N), and (O). We overrule Issue One.

## BEST INTEREST

In Issue Two, Mother contends that the evidence is legally and factually sufficient to establish that termination is in the best interest of the child. There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship. *In the Interest of S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8 (Tex.App.--El Paso 2012, no pet. h.); *In the Interest of L.M.*, 104 S.W.3d 642, 647 (Tex.App.--Houston [1st Dist.] 2003, no pet.). The Supreme Court has set forth a list of non-exclusive factors which can be used to determine a child's best interests. *In re S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8, *citing Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The determination of a child's best interest does not require proof of any unique set of factors, and it does not limit proof to any specific factors. *Id.* Under *Holley*, in reviewing the sufficiency of the evidence to support a best-interest finding, courts may consider (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody in promoting the best interest of the child, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-

child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *In re S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8, *citing Holley*, 544 S.W.2d at 371-72. The same evidence of acts or omissions used to establish grounds for termination under Section 161.001(1) may be probative in determining the best interests of the child. *In re S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8, *citing In the Interest of C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Termination of the parent-child relationship is not justified when the evidence shows merely that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *In re S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8, *citing Clark v. Dearen*, 715 S.W.2d 364, 367 (Tex.App.--Houston [1st Dist.] 1986, no writ).

1.  *The desires of the child.* At the time of trial, C.H. was only eighteen months of age and there is no evidence that he could articulate his desires.

2.  *The present and future physical and emotional needs of the child.* C.H. has hydroencephalitis and is a special needs child. As a result of his premature birth, he is behind developmentally and is currently receiving physical therapy and speech therapy. He will need physical therapy on an ongoing basis. He will also need additional medical care. Simply put, C.H. has significant present and future physical and emotional needs.

3.  *The present and future emotional and physical danger to the child.* Despite C.H.'s needs, Mother and Father failed to take C.H. for five of his weekly physical therapy appointments. They also failed to take him to the doctor for vaccinations. C.H. suffered multiple broken bones during the twelve-week period he lived with Mother and Father following his release from the hospital, yet both parents claimed to have been unaware of those injuries. When Mother and Father took C.H. to the hospital, he had not been bathed and was dirty. The

- 10 -

inability of Mother and Family to recognize that a lack of medical care and hygiene presented a physical danger to C.H. indicates there is a risk of future physical danger. There is also evidence of present and future emotional danger. After C.H. was removed from the home and before the parents moved to Dallas, Mother and Father visited the child between twelve and fifteen times out of twenty available visits. After they moved to Dallas, they did not visit C.H. at all or communicate with the caseworker to inquire about him. They subsequently returned to Monahans and resumed visitation but Mother visited the child only four times out of ten available visits.

4. *The parental abilities of the persons seeking custody in promoting the best interest of the child*. There is substantial evidence that Mother and Father failed to provide a safe and stable home for C.H. While Mother completed the parenting classes as required by the service plan, she has shown an inability to care for C.H.

5. *Available assistance programs*. The Department provided parenting classes, which Mother completed, but she failed to complete counseling or the MHMR assessment.

6. *The plans for the child by the individuals or agency seeking custody*. Mother did not introduce evidence of her plans for C.H.'s future. The Department recommended that Mother's parental rights be terminated and that C.H. be placed with his maternal grandmother.

7. *The stability of the home or proposed placement*. There is evidence that Mother and Father cannot provide a stable home for C.H. because they frequently move from the home of one relative to another. After the Department removed C.H. from the home, Mother and Father lived with C.A. until December 2011. When C.A. asked them to move out, Mother and Father moved to Dallas a few days before Christmas and stayed with her father, L.V., for a

short period of time. They subsequently moved to Rockwall, Texas to live at her grandparents' house. Mother and Father moved back to Monahans in April 2012. Mother had been unable to keep a job for more than six weeks and Father had quit two jobs to move to a town where he did not have a job. At the time of trial, Mother was working with Father at a tire shop in a job she described as temporary. Father testified that he had had six jobs since C.H. had been removed from their care.

8. *Acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate*. During the twelve weeks C.H. lived with Mother and Father, he suffered multiple broken bones, including spiral breaks of both legs. Mother and Father insisted they were unaware of these injuries and did not know who was responsible, but the evidence belies these assertions. The trier of fact could have inferred from the evidence showing Mother and Father failed to take C.H. for weekly physical therapy and for his vaccinations that they were aware of the injuries and did not want them to be discovered. This is certainly evidence that the parent-child relationship is inappropriate.

9. *Any excuse for the parent's acts or omissions*. Mother and Father offered various excuses for failing to take C.H. to the doctor and to complete the service plan but those excuses were contradicted by other evidence and shown to be unfounded. There is no excuse for causing a child to suffer broken ribs or spiral fractures of both legs.

Having reviewed all of the evidence under the standard for legal sufficiency, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of Mother's parental rights is in the best interest of the child. The evidence is also factually sufficient to support the challenged finding. We overrule Issue Two and affirm the judgment terminating Mother's parental rights.

October 17, 2012                    _____
                                   ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.