COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| C.H., | § | No. 08-12-00251-CV |
| Appellant, | § | Appeal from |
| v. | § | 143rd District Court |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, | § | of Ward County, Texas |
| Appellee. | § | (TC # 11-07-22,655-CVW) |

## **O P I N I O N**

C.H. (Father) is appealing from a judgment terminating his parental rights to his biological child, C.H., Jr. (C.H.)[1]  We affirm.

## **FACTUAL SUMMARY**

C.H. was born two months premature on February 10, 2011 and was not released from the hospital until late April 2011.  Over the course of the next three months, Mother, Father, and C.H. lived with both maternal and paternal grandparents at various times.  On July 21, 2011, C.H. Sr. (Father) was changing the baby's diaper when he heard one of the baby's legs "pop."  He explained that the leg simply popped when he was holding the child by the ankles with one hand and lifting him while he changed the diaper.  Mother, Father, the paternal grandparents, and Father's sister were present when the injury occurred.  They took C.H. to Ward Memorial Hospital and it was determined that he had a spiral break of his left femur.  X-rays showed that

---

[1] Appeals from a judgment terminating parental rights are accelerated.  *See* TEX.R.APP.P. 28.4.  The Texas Supreme Court has determined that an appellate court should dispose of these appeals within 180 days after the notice of appeal is filed.  TEX.R.JUD'L ADMIN. 6.2(a).  The Court appreciates the efforts of counsel for Appellant and the Texas Department of Family and Protective Services in filing their respective briefs in a timely manner in this super-accelerated format.

the child had three partially-healed broken ribs and he had also suffered a spiral fracture of his other leg. Neither parent knew how these other bones had been broken or who caused the injuries. C.H. was transferred from Ward Memorial Hospital to Covenant Medical Center in Lubbock. According to Dr. Patterson at Covenant, all of the injuries appeared to be non-accidental. The Department initiated an investigation because the parents' explanation about the broken leg did not comport with the nature of the injury. On July 29, 2011, the Department filed a petition to terminate the parental rights of both Mother and Father. The Department also requested that it be appointed managing conservator of the child.

The petition alleged that Father: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; (3) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment or parental rights; (4) constructively abandoned the child; and (5) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child. The child's maternal grandmother, C.A., and her husband, A.A., intervened in the case and sought to be named joint managing conservators, or alternatively, possessory conservators of the child. The child's maternal grandfather, L.V., and his wife K.E., also intervened and requested that they be named joint managing conservators.

Shelby Couch, the Department's caseworker assigned to this case, testified that when the child was brought into the hospital he was dirty as were his parents. During the course of the Department's investigation, Couch learned that Mother had no prenatal care despite a family history of premature births. Further, Mother and Father did not take C.H. to the doctor for his

vaccinations due when he was four months of age. Additionally, C.H. had missed five of his weekly physical therapy appointments. At the conclusion of the investigation, the Department was unable to determine whether Mother had committed physical abuse or neglect, but it found that there was reason to believe Father had committed physical abuse and neglect of the child. The Department cleared the maternal grandmother, C.A., of any wrongdoing. After making these determinations, the Department offered services to the parents and Mother agreed to schedule the child's missed appointments with his doctors and notify the case worker when she had taken care of that task. Mother did not comply. In August 2011, the child was removed from the home and the Department was appointed temporary managing conservator of C.H. A service plan was created for each parent setting forth the steps necessary to achieve reunification with the child. Both parents were required to undergo a psychosocial evaluation, counseling, and parenting classes. Father completed the required parenting classes and a psychosocial evaluation but he did not complete MHMR testing. Mother attended two of the required counseling sessions and Father attended one session. Both parents testified that that the counselor told them that no additional sessions were required but the counselor reported to the Department that the parents had failed to schedule the next appointment and never completed the counseling.

Following a bench trial, the court found that the Department had established the first, second, fourth, and fifth grounds by clear and convincing evidence, and that termination was in the child's best interest. The court appointed the Department as the permanent managing conservator of C.H. and placed him with his maternal grandmother, C.A. The court further ordered that the maternal grandfather, L.V., could have visitation by agreement. Mother, Father, and L.V. each filed notice of appeal.[2]

---

[2] In an opinion and judgment issued on the same date as the opinion and judgment issued in this case, we affirmed the trial court's judgment terminating Mother's parental rights. *See C.H. v. Texas Department of Family and*

**SUFFICIENCY OF THE EVIDENCE**

In Issues One and Two, Father challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of Father's parental rights is in the best interest of C.H. A court may order termination of the parent-child relationship if the court finds by clear and convincing evidence one of the grounds listed under Section 161.001(1) of the Texas Family Code and that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (West Supp. 2012); *In re J. L.,* 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX.FAM.CODE ANN. § 101.007 (West 2008). Due process requires the application of the clear and convincing evidence standard of proof in parental termination cases. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002).

*Standards of Review*

In conducting a legal sufficiency review in a parental termination case, the reviewing court should consider all the evidence in the light most favorable to the challenged finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005); *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.P.B.*, 180 S.W.3d at 573. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must

*Protective Services*, No. 08-12-00250-CV (Tex.App.--El Paso Oct. 17, 2012). Likewise, in a separate opinion and judgment, we affirmed the trial court's judgment placing the child with C.A. *See L.V. v. Texas Department of Family and Protective Services*, No. 08-12-00252-CV (Tex.App.--El Paso Oct. 17, 2012).

disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* Therefore, in conducting a legal sufficiency review in a parental termination case, we must consider all of the evidence, not just that which favors the verdict. *Id.*; *see City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005). An appellate court must defer to the factfinder's determinations on credibility so long as those determinations are not themselves unreasonable. *In re J.P.B.*, 180 S.W.3d at 573; *Southwestern Bell Telephone Company v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004).

In reviewing termination findings for factual sufficiency, a court of appeals must give due deference to the factfinder's findings and should not supplant the factfinder's determination judgment with its own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The court should inquire whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the allegations. *Id.* The reviewing court must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* In applying this standard, an appellate court's review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt. *H.R.M.*, 209 S.W.3d at 108. A court of appeals should detail in its opinion why it has concluded that a reasonable factfinder could not have credited disputed evidence in

favor of the finding.  *In re J.F.C.*, 96 S.W.3d at 266-67.

*Best Interest*

There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship.  *In the Interest of S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8 (Tex.App.--El Paso 2012, no pet. h.); *In the Interest of L.M.*, 104 S.W.3d 642, 647 (Tex.App.--Houston [1st Dist.] 2003, no pet.).  The Supreme Court has set forth a list of non-exclusive factors which can be used to determine a child's best interests.  *In re S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8, *citing Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).  The determination of a child's best interest does not require proof of any unique set of factors, and it does not limit proof to any specific factors.  *Id.*  Under *Holley*, in reviewing the sufficiency of the evidence to support a best-interest finding, courts may consider (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody in promoting the best interest of the child, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions.  *In re S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8, *citing Holley*, 544 S.W.2d at 371-72.  The same evidence of acts or omissions used to establish grounds for termination under Section 161.001(1) may be probative in determining the best interests of the child.  *In re S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8, *citing In the Interest of C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).  Termination of the parent-child relationship is not justified when the evidence shows merely that a parent's failure to provide a

more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *In re S.M.,* --- S.W.3d ----, 2012 WL 4381372 at *8, *citing Clark v. Dearen*, 715 S.W.2d 364, 367 (Tex.App.--Houston [1st Dist.] 1986, no writ).

1.  *The desires of the child*. At the time of trial, C.H. was only eighteen months of age and there is no evidence that he could articulate his desires.

2.  *The present and future physical and emotional needs of the child*. Father argues that the Department presented no evidence of C.H.'s physical and emotional needs. We disagree. C.H. has hydroencephalitis and is a special needs child. As a result of his premature birth, he is behind developmentally and is currently receiving physical therapy and speech therapy. He will need physical therapy on an ongoing basis. He will also need additional medical care. Simply put, C.H. has significant present and future physical needs.

3.  *The present and future emotional and physical danger to the child*. Despite C.H.'s needs, Mother and Father failed to take C.H. for five of his weekly physical therapy appointments. They also failed to take him to the doctor for vaccinations. C.H. suffered multiple non-accidental broken bones during the twelve-week period he lived with Mother and Father following his release from the hospital, yet both parents claimed to have been unaware of those injuries. The trial court was not required to believe Father's testimony about how the most recent broken leg occurred or his assertions that he was unaware of the other injuries. Further, the court could have found that Father did not take the child to his medical care appointments because he knew about the prior injuries and feared they would be discovered. When Mother and Father took C.H. to the hospital, he had not been bathed and was dirty. Even if the trial court believed Father's assertions that he did not intentionally harm C.H., the

inability of Father to recognize that a lack of medical care and hygiene presented a physical danger to C.H. indicates there is a risk of future physical danger. There is also evidence of present and future emotional danger. After C.H. was removed from the home and before the parents moved to Dallas, Mother and Father visited the child between twelve and fifteen times out of twenty available visits. After they moved to Dallas, they did not visit C.H. at all or communicate with the caseworker to inquire about him. They subsequently returned to Monahans and resumed visitation. Father visited C.H. six times out of ten opportunities to visit.

4. *The parental abilities of the persons seeking custody in promoting the best interest of the child*. There is substantial evidence that Mother and Father failed to provide a safe and stable home for C.H. While Father completed the parenting classes as required by the service plan, he has shown an inability to care for C.H.

5. *Available assistance programs*. The Department provided parenting classes, which Father completed, but he failed to complete counseling or the MHMR assessment.

6. *The plans for the child by the individuals or agency seeking custody*. Father did not introduce evidence of his plans for C.H.'s future other than reuniting with and caring for him. The Department recommended that Father's parental rights be terminated and that C.H. be placed with his maternal grandmother.

7. *The stability of the home or proposed placement*. There is evidence that Mother and Father cannot provide a stable home for C.H. because they frequently move from the home of one relative to another. After the Department removed C.H. from the home, Mother and Father lived with C.A. until December 2011. When C.A. asked them to move out of her home, Mother and Father moved to Dallas a few days before Christmas and stayed with her father,

L.V., for a short period of time. They subsequently moved to Rockwall, Texas to live at her grandparents' house. Mother and Father moved back to Monahans in April 2012. Mother had been unable to keep a job for more than six weeks and Father had quit two jobs to move to a town where he did not have a job. At the time of trial, Mother was working with Father at a tire shop in a job she described as temporary. Father testified that he had had six jobs since C.H. had been removed from their care in August 2011.

8. *Acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate*. During the twelve weeks C.H. lived with Mother and Father, he suffered multiple broken bones, including spiral breaks of both legs. Mother and Father insisted they were unaware of these injuries and did not know who was responsible, but the evidence belies these assertions. The trier of fact could have inferred from the evidence showing Mother and Father failed to take C.H. for weekly physical therapy and for his vaccinations that they were aware of the injuries and did not want them to be discovered. This is certainly evidence that the parent-child relationship is inappropriate.

9. *Any excuse for the parent's acts or omissions*. Mother and Father offered various excuses for failing to take C.H. to the doctor and to complete the service plan but those excuses were contradicted by other evidence and shown to be unfounded. There is no excuse for causing a child to suffer broken ribs or spiral fractures of both legs.

Having reviewed all of the evidence under the standard for legal sufficiency, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of Father's parental rights is in the best interest of the child. The evidence is also factually sufficient to support the challenged finding. We overrule Issues One and Two and affirm the judgment terminating Father's parental rights.

October 17, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.