COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | |
|---|---|
| § | No. 08-11-00288-CV |
| § | |
| | Appeal from |
| IN THE INTEREST OF S.M., A CHILD § | |
| | 65th District Court |
| § | |
| | of El Paso County, Texas |
| § | |
| | (TC # 2010CM724) |
| § | |

## **O P I N I O N**

In this accelerated appeal, Appellant (Raul) challenges an order terminating his parental rights to S.M. and appointing the Texas Department of Family and Protective Services as S.M.'s sole managing conservator. He brings five issues for review, four of which relate to the sufficiency of the evidence supporting termination. The remaining issue attacks the denial of a motion for continuance. For the reasons that follow, we affirm.

## **FACTUAL BACKGROUND**

S.M. was born on July 16, 2009. Raul has been incarcerated all of S.M.'s life and has never met his daughter. On February 2, 2010, at approximately 3 p.m., S.M.'s mother left the infant alone in a motel room. S.M. was not quite seven months old at the time. A neighboring motel guest heard the baby crying and discovered her alone on the bed. The neighbor took her to another motel resident who knew S.M.'s mother. Around 2 a.m. on February 3, 2010, S.M.'s mother "strolled back in, intoxicated." An altercation occurred between S.M.'s mother and the resident caring for S.M. The police were dispatched to the motel and the Department was called.

The police arrested S.M.'s mother for child endangerment, and the Department caseworker placed the baby in foster care.

The following day, the Department filed its original petition for protection of a child, seeking conservatorship of S.M. and termination of the parental rights of both parents. The motion was accompanied by an affidavit from the caseworker detailing the events leading to removal. On February 5, 2010, the trial court entered temporary orders appointing the Department as temporary sole managing conservator. The mother's rights were terminated prior to trial, which was scheduled for September 20, 2011.

At trial, the Department introduced judgments from Raul's four prior convictions. Three of the convictions involved assault and one involved possession of cocaine. In May 2001, Raul pled guilty to assault of a police officer. He was placed on probation for five years, but less than seven months later, his probation was revoked for failing to meet with his probation officer as required. Raul admittedly absconded to Florida to try to get a job and to "start a new support for [his] family." As a result of violating the terms of his probation, Raul was incarcerated for three years. He evidently was released early because on December 22, 2003, he was convicted for possession of cocaine and ordered to serve 180 days. Finally, the Department introduced evidence of two separate convictions of family violence assault causing bodily injury. Both were committed against S.M.'s mother. Raul pled guilty to the first offense and was sentenced to seventy-five days in the El Paso County Jail. He also pled guilty to the second offense and was sentenced to four years' imprisonment.

At trial, Raul admitted he pled guilty to each and every offense, but claimed he was actually innocent of all charges. For example, he testified that because of his experiences with

drugs, he's a good role model for S.M. and is "educated enough to tell her, Look, don't be doing this." However, the following question and answer session followed:

Q. [BY COUNSEL FOR S.M.]: You didn't learn that after your first assault conviction?

A. [BY APPELLANT]: No, I did not learn that, because it was simply not an assault. The police officer assaulted me.

Q. Okay. You didn't learn that after your conviction for possession of cocaine or a cocaine pipe?

A. It wasn't possession of cocaine.

Q. You pled guilty to possession of cocaine?

A. I pled guilty. I was not competent in the field of law. If I was competent in the field of law, I would have won all those cases.

Q. You still didn't learn from being incarcerated, a second time, that you shouldn't do stuff against the law; correct?

A. It was -- correct. Yes. I kept on doing it and doing it.

Q. But you're testifying before the Court now that you've learned your lesson now and you don't intend to commit any crime?

A. Yes, sir.

Q. Even though you assaulted a family member?

A. It was not an assault. Of course, under the law, even if I raise my voice to her and she feels threatened, that is considered assault.

Q. But you physically touched her; correct?

A. Yes, I physically touched her.

Q. After being incarcerated for assault once, incarcerated for cocaine once, you still broke the law with an assault on a family member?

A. Yes.

. . .

Q. [BY MR. SHANE]: Sir, earlier you testified that you had pled guilty to hitting [S.M.'s mother] with your hand on her face; correct?

- 3 -

A. No, I did not. I pled guilty, but I did not hit her on the face. It was due to the fact the State does not -- if I was to stay in jail, it's three months. It's a Class A misdemeanor. It's three months without -- I need to get out, make money, so on. So I pleaded guilty.

Q. You were under oath when you pled guilty; right?

A. Yes, I pleaded guilty under oath.

Q. Just like you're under oath today?

A. Yes.

Q. So you're telling the Court, prior, when you pled guilty under oath and said you did that, you were not telling the truth?

A. I wanted to get out, yes.

Q. You were not telling the truth under oath?

A. We had a complication.

Q. Sir, it's a simple question. Did you lie under oath when you pled guilty?

A. That I hit her on the face? Yes, I lied under oath.

Q. Taking an oath really doesn't mean anything to you whether you're going to tell the truth or not?

A. (No audible response.)

Q. So under oath you lied; correct?

A. Under that day, yes. That day, I did not assault her on the face.

Q. But you lied under oath when you said you did?

A. Right. That day, yes.

Raul also testified regarding his permanency plan for S.M. "My plan for the future is to educate my child, try to keep her away from society." He emphasized that he does not believe society is a proper role model and that he wants to teach his daughter that the system is corrupt. In fact, he wants S.M. to be brought to the prison to visit him so that "she could see what the State is doing to me and other people."

Raul acknowledged at trial that currently he has no way of supporting S.M. because he is incarcerated, but he has completed a drug course program and is up for parole. Once out of prison he plans to look for a job and to live in a one-bedroom duplex owned by his uncle. His uncle also testified. He was willing to help Raul upon release from prison. The uncle lived in a duplex with a two bedroom unit on one side and a one bedroom unit on the other. The one bedroom unit was unoccupied and Raul could stay there as long as he wanted. But it had been "kind of destroyed" by the previous tenants, and it did not have electricity, a refrigerator, or a stove.

Tanya Berry, a CPS specialist and the on-going caseworker for S.M., testified regarding the Department's plans for S.M. Adoption would be in the child's best interest. Raul's permanency plan was not feasible because:

> As [Appellant], himself, testified, he's not sure if he is going to be paroled or not. So that leaves us in a situation where, if we waited around to see if he was going to be paroled, [S.M.] wouldn't reach permanency. She wouldn't reach -- she would just be sitting in the system waiting for him.

Berry had been in contact with Raul's sister who is interested in adopting S.M. She is not interested in temporary placement while awaiting Raul's release from prison. The Department had not as yet performed a home study because the sister recently moved, but the investigation was ongoing. Berry also testified that background checks were performed for all the relatives in the home and none had CPS or criminal histories. Berry then explained an alternative plan in the event the child's aunt could not or did not adopt her. S.M. has been with the same foster parents since she was removed from her mother's care in February 2010 and has firmly bonded with them.

Berry described S.M. as a "very active child . . . She's a lovable child. Loves to be outside. Loves to run around." The child has a speech delay but is receiving services and is "[v]ery adoptable."

After hearing all the evidence, the trial court found that there was clear and convincing evidence to support termination of Raul's parental rights under subsections (E) and (Q) of Texas Family Code Section 161.001(1). The trial court also found that termination was in S.M.'s best interest as required by Texas Family Code Section 161.001(2).

## DENIAL OF APPELLANT'S MOTION FOR CONTINUANCE

We begin with Raul's third point of error involving the denial of his request for a continuance.

### *Standard of Review*

We review the denial of a motion for continuance for an abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); s*ee Serrano v. Ryan's Crossing Apartments*, 241 S.W.3d 560, 564 (Tex.App.--El Paso 2007, pet. denied); *Apodaca v. Rios*, 163 S.W.3d 297, 301 (Tex.App.--El Paso 2005, no pet.). Absent a clear abuse of discretion, a trial court's action in granting or denying a motion for continuance will not be disturbed. *Villegas*, 711 S.W.2d at 626; *Wilborn v. GE Marquette Medical Systems, Inc.*, 163 S.W.3d 264, 267 (Tex.App.--El Paso 2005, pet. denied). A trial court "abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985).

In determining whether a trial court has abused its discretion, we do not substitute our judgment for that of the trial court, but decide only whether the trial court acted without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007);

*Cire v. Cumings*, 134 S.W.3d 835, 838-39 (Tex. 2004); *In the Interest of G.A.H. and K.D.B*, No. 02-11-00015-CV, 2011 WL 4711980, at *3 (Tex.App.--Fort Worth, Oct. 6, 2011, no pet.)(mem. op.). In other words, we cannot conclude that a trial court abused its discretion merely because we would have ruled differently under the same circumstances. *E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see Low*, 221 S.W.3d at 620; *In the Interest of G.A.H. and K.D.B,*, 2011 WL 4711980, at *3.

### *Non-Compliance With Rule 251*

A motion for continuance must be in writing, state the specific facts supporting the motion, and be verified or supported by an affidavit. *See Serrano*, 241 S.W.3d at 564; TEX.R.CIV.P. 251. It shall not be granted except for "sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX.R.CIV.P. 251. If the motion is not verified or supported by an affidavit, we presume the trial court did not abuse its discretion by denying a continuance. *See Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Serrano*, 241 S.W.3d at 564; *Wilborn*, 163 S.W.3d at 267; *Southwest Country Enterprises, Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 493 (Tex.App.--Fort Worth 1999, pet. denied); *Mathew v. McCoy*, 847 S.W.2d 397, 399-400 (Tex.App.--Houston [14th Dist.] 1993, no writ). Verification is "[a] formal declaration made in the presence of an authorized officer, such as a notary public, by which one swears to the truth of the statements in the document." *Andrews v. Stanton*, 198 S.W.3d 4, 8 (Tex.App.--El Paso 2006, no pet.), *citing* Black's Law Dictionary 1556 (7th Ed. 1999).

The motion was signed by defense counsel, but it was neither verified nor supported by an affidavit. Accordingly, the trial court did not abuse its discretion in denying the motion. *See In re G.A.H.*, 2011 WL 4711980, at *4; *In the Interest of C.P.V.Y.*, 315 S.W.3d 260, 270

(Tex.App.--Beaumont 2010, no pet.); *see also In the Interest Z.C.*, 280 S.W.3d 470, 478 (Tex.App.--Fort Worth 2009, pet. struck)(holding that where the motion for continuance was unsworn and not supported by an affidavit, "under the plain language of the rule, the trial court was without discretion to grant it"). Issue Three is overruled.

### TERMINATION OF PARENTAL RIGHTS

Raul's remaining four issues challenge the legal and factual sufficiency of the evidence to support the trial court's termination order. The natural right that exists between parents and their children is one of constitutional magnitude. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see also Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982)(acknowledging that the right of a parent to maintain custody of and raise his or her child "is an interest far more precious than any property right."); *In the Interest of M.S., E.S., D.S., S.S., and N.S.*, 115 S.W.3d 534, 547 (Tex. 2003)(noting that Texas courts recognize that "a parent's interest in maintaining custody of and raising his or her child is paramount"). Accordingly, involuntary termination of parental rights is a drastic remedy which divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Id.*; *In the Interest of D.S.P. and H.R.P.*, 210 S.W.3d 776, 778 (Tex.App.--Corpus Christi 2006, no pet.). For this reason, we strictly scrutinize termination proceedings and construe any statutes authorizing involuntary termination in favor of the parent. *Holick*, 685 S.W.2d at 20-21.

Although parental rights are of constitutional magnitude, they are not absolute. *In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Instead, because of the severity and permanency of termination, due process requires the party seeking to terminate parental rights prove the necessary elements by the heightened burden of proof of clear and convincing evidence. *In the Interest of B.L.D.*, 113 S.W.3d 340, 353-54 (Tex. 2003). This heightened standard is likewise statutorily required. In a proceeding to terminate parental rights, the petitioner must demonstrate by clear and convincing evidence that: (1) the parent committed one or more of the acts specifically set forth in Texas Family Code section 161.001(1) as grounds for termination; and (2) that termination is in the best interest of the child. *See* TEX.FAM.CODE ANN. § 161.001 (West 2008). "Clear and convincing evidence" means the measure or degree of proof that "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX.FAM.CODE ANN. § 101.007 (West 2008); s*ee In the Interest of J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also In the Interest of J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007)(contrasting the standards applied in termination proceedings and the standards applied in modification proceedings); *In the Interest of C.D.*, No. 02-10-00070-CV, 2011 WL 1743688, at *4 (Tex.App.--Fort Worth May 5, 2011, no pet.).

### *Standards of Review*

When reviewing legal sufficiency challenges to termination findings, we consider all of the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.*, 96 S.W.3d at 266. We give deference to the fact finder's conclusions and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *Id.*; *In re J.F.C.*, 96 S.W.3d at 266. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have

been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings, and we cannot supplement such judgment with our own. *In the Interest of H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *In the Interest of C.D.*, No. 02-10-00070-CV, 2011 WL 1743688, at *5 (Tex.App.--Fort Worth May 05, 2011, no pet.). We determine whether, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.*, 209 S.W.3d at 108; *In re J.F.C.*, 96 S.W.3d at 266; *In the Interest of T.G.*, No. 14-09-00299-CV, 2010 WL 1379977, at *5 (Tex.App.--Houston [14th Dist.] Apr. 8, 2010, no pet.).

### *Finding of Endangerment Under Subsection 161.001(1)(E)*

In his first two issues, Raul challenges the factual sufficiency of the evidence to support involuntary termination under Section 161.001(1), subsections (E) and (Q). However, only one predicate violation under Section 161.001(1) is necessary to support a termination decree. TEX.FAM.CODE ANN. § 161.001(1); *In re D.M.*, 58 S.W.3d at 813; *In the Interest of S.F.*, 32 S.W.3d 318, 320 (Tex.App.--San Antonio 2000, no pet.); *see also Texas Department of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990)(op. on reh'g). For the reasons discussed below, we conclude the evidence is factually sufficient to support the trial court's finding under subsection (E) and therefore we need not address the challenges with respect to subsection (Q).

Under subsection E of Section 161.001(1), the trial court was required to find, by clear and convincing evidence, that Raul, "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the

child." TEX.FAM.CODE ANN. § 161.001(1)(E). The term "endanger" means that the child was exposed to loss or injury or jeopardized. *See Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Boyd*, 727 S.W.2d at 533. Likewise, while endangerment often entails physical endangerment, the statute does not require that conduct be directed at a child or cause actual harm; rather, it is sufficient if the conduct endangers the emotional well-being of the child. *See id.*; *In the interest of U.P.*, 105 S.W.3d 222, 233 (Tex.App.--Houston [14th Dist.] 2003, pet. denied); *Robinson v. Texas Department of Protective & Regulatory Services*, 89 S.W.3d 679, 686 (Tex.App.--Houston [1st Dist.] 2002, no pet.). Thus, the court's inquiry encompasses acts that endanger a child's physical or emotional well-being, or both. *See Boyd,* 727 S.W.2d at 534; *Smith v. Sims*, 801 S.W.2d 247, 250 (Tex.App.--Houston [14th Dist.] 1990, no pet.).

The relevant inquiry for termination under Section 161.001(1)(E), is whether evidence exists that the endangerment was the direct result of the parent's conduct, including acts, omissions, or failures to act. TEX.FAM.CODE ANN. § 161.001(1)(E); *In the Interest of J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.--Fort Worth 2003, no pet.). Termination requires a voluntary, deliberate, and conscious course of conduct; it must be based on more than a single act or omission. *In re J.T.G.*, 121 S.W.3d at 125; *In the Interest of J.W.*, 152 S.W.3d 200, 205 (Tex.App.--Dallas 2004, pet. denied). It is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *In re J.T.G.*, 121 S.W.3d at 125. Further, in considering whether a relevant course of conduct has been established, a court properly may consider both actions and inactions occurring both before and after a child's birth. *See In the Interest of S.T.*, 263 S.W.3d 394, 401-02 (Tex.App.--Waco 2008,

pet. denied); *see In the Interest of A.S.*, D.S., and L.A.S., 261 S.W.3d 76, 83 (Tex.App.--Houston [14th Dist.] 2008, pet. denied).

The endangerment to the child's well-being may be inferred from parental misconduct, including conduct that subjects the child to a life of uncertainty and instability. *Boyd*, 727 S.W.2d at 533; *In the Interest of R.W.*, 129 S.W.3d 732, 738-39 (Tex.App.--Fort Worth 2004, pet. denied)(considering drug and alcohol abuse in endangerment finding). Evidence of criminal conduct, convictions, and imprisonment and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *In re J.T.G.*, 121 S.W.3d at 133. Imprisonment alone does not constitute an endangering course of conduct but it is a fact properly considered on the endangerment issue. *Boyd*, 727 S.W.2d at 533-34; *In re R.W.*, 129 S.W.3d at 743-44. Routinely subjecting a child to the probability that she will be left alone because her parent is in jail, endangers the child's physical and emotional well-being. *See In the Interest of S.D.*, 980 S.W.2d 758, 763 (Tex.App.--San Antonio 1998, pet. denied. However, "the relationship of the parent and child, as well as efforts to improve or enhance parenting skills, are relevant in determining whether a parent's conduct results in 'endangerment' under section 161.001(1)(E), even where the parent is incarcerated." *In the Interest of D.T.*, 34 S.W.3d 625, 640 (Tex.App.--Fort Worth 2000, pet. denied).

In this case, there is evidence of multiple criminal convictions, including three convictions for assault causing bodily injury, two of which involved domestic violence against S.M.'s mother. One of those occurred during pregnancy. Even though all of these offenses occurred before S.M. was born, they can still be considered as part of a voluntary, deliberate, and conscious course of conduct that had the effect of endangering S.M. *See In the Interest of R.W.*, 129 S.W.3d 732, 738 (Tex.App.--Fort Worth 2004, pet. denied); *Harris v. Herbers*, 838 S.W.2d

938, 942-43 (Tex.App.--Houston [1st Dist.] 1992, no writ); *see also In re S.D.*, 980 S.W.2d at 763 (conduct that routinely subjects a child to the probability that the child will be left alone because a parent is jailed endangers both the physical and emotional well-being of the child). Abusive and violent criminal conduct by a parent can produce an environment that endangers the well-being of a child. *In the Matter of B.R.*, 822 S.W.2d 103, 106 (Tex.App.--Tyler 1991, writ denied). Evidence as to how a parent has treated another child or spouse is relevant regarding whether a course of conduct under Section 161.001(1)(E) has been established. *In the Interest of D.T.*, 34 S.W.3d 625, 636-37 (Tex.App.--Fort Worth 2000, pet. denied). Evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future. *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 824 (Tex.App.--Fort Worth 2007, no pet.); *In the Interest of M.G.M.*, 163 S.W.3d 191, 202 (Tex.App.--Beaumont 2005, no pet.). Instead of taking any responsibility for his prior criminal conduct, Raul claimed that he was actually innocent, despite his guilty pleas. In so doing, he admitted to perjury. He proclaims that he is a victim of a corrupt system, which is the lesson he intends to teach his daughter.

We must conclude that there is sufficient evidence from which a rational trier of fact could have formed a firm belief or conviction that Raul engaged in a course of conduct endangering his daughter's physical or emotional well-being. Thus, the evidence is factually sufficient to support the trial court's termination finding on the Section 161.001(1)(E) ground. We overrule Issues One and Two. We must now determine whether the evidence was legally and factually sufficient to support the trial court's finding that termination was in the best interests of the child. *See* TEX.FAM.CODE ANN. § 161.001(2).

### Best Interest of the Child

In Issues four and five respectively, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's determination that terminating his parental rights was in the best interest of his daughter. There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship. *In the Interest of L.M.*, 104 S.W.3d 642, 647 (Tex.App.--Houston [1st Dist.] 2003, no pet.). The Supreme Court has set forth a list of non-exclusive factors which can be used to determine a child's best interests. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The determination of a child's best interest does not require proof of any unique set of factors, and it does not limit proof to any specific factors. *Id*. Under *Holley*, in reviewing the sufficiency of the evidence to support a best-interest finding, courts may consider (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody in promoting the best interest of the child, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Id*. The same evidence of acts or omissions used to establish grounds for termination under Section 161.001(1) may be probative in determining the best interests of the child. *In the Interest of C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re L.M.*, 104 S.W.3d at 647. Termination of the parent-child relationship is not justified when the evidence shows merely that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *Clark v. Dearen*, 715 S.W.2d

364, 367 (Tex.App.--Houston [1st Dist.] 1986, no writ).

At the time of trial, S.M. was only two years old and far too young to express her desires to the court. Clearly, she has never met her father and therefore there is no reason to believe that the child has any conscious knowledge of him. *See Walker v. Texas Department of Family and Protective Services*, 312 S.W.3d 608, 619 (Tex.App.--Houston [1st Dist.] 2009, pet. denied). "The goal of establishing a stable, permanent home for a child is a compelling state interest." *Walker*, 312 S.W.3d at 619, *citing In re C.E.K.*, 214 S.W.3d 492, 498 (Tex.App.--Dallas 2006, no pet.). While there was testimony that Raul once asked his uncle to call S.M.'s mother, he did not make any other effort to meet or contact his child, nor did he recall ever asking a family member to contact S.M. This failure to attempt or maintain any significant contact with S.M. supports the conclusion that Raul is not able to meet S.M.'s physical and emotional needs. *See In the Interest of T.G.*, No. 14-09-00299-CV, 2010 WL 1379977, at *9 (Tex.App.--Houston [14th Dist.] Apr. 8, 2010, no pet.). Additionally, the evidence discussed in support of the trial court's finding of endangerment, is also probative in determining the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. His multiple convictions, including a conviction for domestic assault during pregnancy, demonstrate a lack of parental ability.

Caseworker Tanya Berry testified that S.M.'s permanency plan is adoption. Currently, the Department is looking at Raul's sister as a potential adoptive parent. The child's aunt has expressed her desire to adopt S.M., and she, as well as the other members of her household, have all passed background checks. There is also a back-up plan for adoption by S.M.'s foster family as the child is doing well in their household

In light of all of the evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Raul's parental rights was in the best interest of S.M.

Accordingly, we overrule Issues Four and Five and affirm the order of termination.


September 26, 2012                    _____
                                     ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.