COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 L.V.,
  
                                    
 Appellant,
  
 v.
  
 TEXAS DEPARTMENT OF FAMILY
 AND PROTECTIVE SERVICES,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-12-00252-CV
  
                          Appeal from
  
 143rd District
 Court
  
 of Ward County,
 Texas
  
 (TC #
 11-07-22,655-CVW)
 
 
 
 
  
 
 
  
 
 
  
 
 


                                                                  O
P I N I O N

 

L.V. is appealing from a
judgment which terminated the parental rights of his daughter to her biological
child, C.H., Jr. (C.H.) and placed the child in the home of the child’s
maternal grandmother.[1]  We affirm.

FACTUAL SUMMARY

C.H.
was born two months premature on February 10, 2011 and was not released from
the hospital until late April 2011.  Over
the course of the next three months, the child and his parents, C.H. and C.H.,
Sr. (hereinafter referred to as Mother and Father) lived with the couple’s
parents at various times.  On July 21,
2011, Father was changing the baby’s diaper when he heard one of the baby’s
legs “pop.”  He explained that the leg simply
popped when he was holding the child by the ankles with one hand and lifting
him while he changed the diaper.  Mother,
Father, the paternal grandparents, and Father’s sister were present when the
injury occurred.  They took C.H. to Ward
Memorial Hospital and it was determined that he had a spiral break of his left
femur.  X-rays showed that the child had
three partially-healed broken ribs and he had also suffered a spiral fracture
of his other leg.  Neither parent knew
how these other bones had been broken or who caused the injuries.  C.H. was transferred from Ward Memorial
Hospital to Covenant Medical Center in Lubbock. 
According to Dr. Patterson at Covenant, all of the injuries appeared to
be non-accidental.  The Department
initiated an investigation because the parents’ explanation about the broken
leg did not comport with the nature of the injury.  On July 29, 2011, the Department filed a
petition to terminate the parental rights of both Mother and Father.  The Department also requested that it be
appointed managing conservator of the child.

The
petition alleged that Mother and Father: 
(1) knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endanger the physical or emotional well-being
of the child; (2) engaged in conduct or knowingly placed the child with persons
who engaged in conduct which endangers the physical or emotional well-being of
the child; (3) executed before or after the suit is filed an unrevoked or
irrevocable affidavit of relinquishment or parental rights; (4) constructively
abandoned the child; and (5) failed to comply with the provisions of a court
order that specifically established the actions necessary for her to obtain the
return of the child.  The child’s
maternal grandmother, C.A., and her husband, A.A., intervened in the case and
sought to be named joint managing conservators, or alternatively, possessory
conservators of the child.  The child’s
maternal grandfather, L.V., and his wife K.E., also intervened and requested
that they be named joint managing conservators. 


Shelby
Couch, the Department’s caseworker assigned to this case, testified that when
the child was brought into the hospital he was dirty as were his parents.  During the course of the Department’s
investigation, Couch learned that Mother had no prenatal care despite a family
history of premature births.  Further,
Mother and Father did not take C.H. to the doctor for his vaccinations due when
he was four months of age.  Additionally,
C.H. had missed five of his weekly physical therapy appointments.  At the conclusion of the investigation, the
Department was unable to determine whether Mother had committed the physical
abuse or neglect, but it found that there was reason to believe Father had
committed physical abuse and neglect of the child.  The Department cleared the maternal
grandmother, C.A., of any wrongdoing.  After
making these determinations, the Department offered services to the parents and
Mother agreed to schedule the child’s missed appointments with his doctors and
notify the case worker when she had taken care of that task.  Mother did not comply.  In August 2011, the child was removed from
the home and the Department was appointed temporary managing conservator of
C.H.  A service plan was created for each
parent setting forth the steps necessary to achieve reunification with the
child.  Both parents were required to
undergo a psychosocial evaluation, counseling, and parenting classes.  Both parents completed the required parenting
classes and a psychosocial evaluation but they did not complete MHMR
testing.  Mother attended two of the required
counseling sessions and Father attended one session.  Both parents testified that that the
counselor told them that no additional sessions were required but the counselor
reported to the Department that the parents had failed to schedule the next
appointment and never completed the counseling. 


While
this case was pending, Mother gave birth to a daughter, L.H., who was born
prematurely.  As a result of the pending
case involving C.H., L.H. was removed from the care of Mother and Father and
placed with L.V. but a permanency hearing had not yet occurred.  Following a bench trial, the court found that
the Department had established by clear and convincing evidence the first,
second, fourth, and fifth grounds alleged against Mother and Father, and that
termination of their parental rights was in the child’s best interest.  The court also found that appointment of
either C.A. or L.V. as permanent managing conservator is not in the child’s
best interest.  The trial court appointed
the Department as the permanent managing conservator of C.H. and placed him
with his maternal grandmother, C.A.  The
court further ordered that the maternal grandfather, L.V., could have
visitation by agreement.  Mother, Father,
and L.V. each filed notice of appeal.[2]  

SECTION 162.302(E)

            In his first issue, L.V. argues that
the trial court misapplied the law by failing to keep the two siblings, C.H.
and L.H., together when making the placement determination.  L.V. relies on Section 162.302(e) of the
Texas Family Code[3]
and 40 Tex.Admin.Code § 700.1309
to support his argument that public policy requires that siblings be placed
together.[4]   Section
162.302(e) provides that:

It is the intent of
the legislature that the department in providing adoption services, when it is
in the children’s best interest, keep siblings together and whenever possible
place siblings in the same adoptive home.

 

Section 162.302 is
found in a Subchapter of the Family Code addressing adoption services by the
Department of Protective and Regulatory Services and pertains to an adoption
assistance program.  See Tex.Fam.Code Ann. § 162.302.  As acknowledged by L.V., the statute is applicable
when both siblings are being placed for adoption.  See In
the Interest of D.R.L.M., 84 S.W.3d 281, 304 (Tex.App.--Fort Worth 2002,
pet. denied).  Placement of L.H. was not
at issue in this case.  At the time of
trial, L.H. had not been permanently placed with L.V. and there is no evidence
in the record that permanent placement or adoption has since occurred.  Even assuming that Section 162.302(e) is
applicable here, the legislative intent set forth in the statute expressly yields
to the best interest requirement.  See Tex.
Fam.Code Ann. § 162.302(e); In re
D.R.L.M., 84 S.W.3d at 304-07.  

L.V.
also relies on the Texas Administrative Code in making his argument that the
court failed to consider the public policy requiring that siblings be kept together.
 See
40 Tex.Admin.Code § 700.1309.  Section 700.1309 provides as follows:

§ 700.1309.  What factors
does DFPS consider when selecting the most appropriate living arrangement for a
child?

 

As mandated by § 475
of Title IV-E of the Social Security Act, DFPS must place a child in the least
restrictive (most family-like) and most appropriate setting available, and in
close proximity to the parents’ home when the child's permanency goal is
reunification, consistent with the best interest and special needs of the
child.  When determining whether a
placement is consistent with the best interest and special needs of a child,
DFPS considers the following factors:

 

(1)
First and foremost, a child’s placement must be safe;

(2) Placement with a
relative or other person with whom the child has a long-standing and
significant relationship is generally preferred over placement with a
non-related caregiver, provided the relative or other person can provide a safe
and appropriate home;

 

(3) Siblings removed
from their home should be placed together unless such placement would be
contrary to the safety or well-being of any of the siblings;

 

(4) Consideration
must be given to the appropriateness of the child’s current educational setting
and the proximity of the placement to the school in which the child is enrolled
at the time of placement;

 

(5) The placement
must be able to meet the physical and emotional needs of the child, including
any special needs that the child may have, taking into consideration any
available support services that might assist the placement in meeting the child’s
needs; and

 

(6) Consideration must
be given to the child’s desires and needs for a loving and permanent home.

 

This section of
TAC, like Section 162.302 of the Family Code, makes the child’s safety and best
interests of the child the paramount concern when determining placement.
Accordingly, we find that these provisions did not require the trial court to
place C.H. with his sibling.  Issue One
is overruled.

CONSERVATORSHIP

            In Issue Two, L.V. contends that the
trial court abused its discretion by appointing the Department as the sole managing
conservator of C.H. and by placing the child with C.A.  He challenges the legal and factual
sufficiency supporting the determination of conservatorship. 

Standards of Review and Applicable Law

            Under Section 153.002, the primary
consideration in determining issues of conservatorship and possession of and
access to the child is always the child’s best interest.  Tex.Fam.Code
Ann. § 153.002 (West 2008); In the
Interest of J.A.J., 243 S.W.3d 611, 614 (Tex. 2007).  If the court terminates the parent-child
relationship with respect to both parents or to the only living parent, the
court is required to appoint a suitable, competent adult, the Department of
Protective and Regulatory Services, a licensed child-placing agency, or an
authorized agency as managing conservator of the child.  Tex.Fam.Code
Ann. § 161.207(a)(West 2008).  

The
trial court’s appointment of a managing conservator under Section 161.207 is
based on a preponderance of the evidence. 
See Tex.Fam.Code Ann. § 105.005 (West 2008)(“Except as otherwise
provided by this title, the court’s findings shall be based on a preponderance
of the evidence.”).  The trial court has
wide latitude in determining the best interests of a minor child.  In the
Interest of W.M., 172 S.W.3d 718, 724 (Tex.App.--Fort Worth 2005, no
pet).  We review the trial court’s
decision for an abuse of discretion and will not reverse unless the decision is
arbitrary and unreasonable.  See In re J.A.J., 243 S.W.3d at 616.  In conducting our review of the court’s
decision, we engage in a two-pronged inquiry: (1) Did the trial court have
sufficient information upon which to exercise its discretion, and (2) did the
trial court err in its application of discretion?  In re
J.A.H., 311 S.W.3d 536, 540 (Tex.App.--El Paso 2009, no pet.).  The
traditional sufficiency standards are employed in answering the first
question.  Id.  Once we have determined
whether sufficient evidence exists, we must then decide whether the trial court
made a reasonable decision.  Id.  In
other words, we must conclude that the ruling was neither arbitrary nor
unreasonable.  Id.

In
considering a legal sufficiency or “no evidence” point, we consider the
evidence in the light most favorable to the verdict and indulge every
reasonable inference that would support it. 
City of Keller v. Wilson, 168
S.W.3d 802, 822 (Tex. 2005).  Even if
evidence is undisputed, it is the province of the trier of fact to draw from it
whatever inferences it wishes so long as more than one inference is
possible.  Id. at 821.  But if the evidence
allows only one inference, neither the trier of fact nor the reviewing court
may disregard it.  Id.  We are also mindful that
the trier of fact is the sole judge of the credibility of the witnesses and the
weight to give their testimony.  Id. at 819.  When there is conflicting evidence, it is the
province of the trier of fact to resolve such conflicts.  Id.
at 820.  In every circumstance in which a
reasonable trier of fact could resolve conflicting evidence either way, the
reviewing court must presume it did so in favor of the prevailing party, and
disregard the conflicting evidence in its sufficiency review.  Id.
at 821.  If the evidence at trial would
enable reasonable and fair-minded people to differ in their conclusions, then
the trier of fact must be allowed to do so. 
Id. at 822.  So long as the evidence falls within this
zone of reasonable disagreement, we may not substitute our judgment for that of
the trier-of-fact.  Id.  The ultimate test for
legal sufficiency is whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review.  Id.
at 827.

A
factual sufficiency point requires examination of all of the evidence in
determining whether the finding in question is so against the great weight and
preponderance of the evidence as to be manifestly unjust.  In re
J.A.H., 311 S.W.3d at 541, citing In
re King’s Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).  The reviewing court cannot substitute its
conclusions for those of the jury.  In re J.A.H., 311 S.W.3d at 541.  If there is sufficient competent evidence of
probative force to support the finding, it must be sustained.  Id.


            The Supreme Court has set forth a
list of non-exclusive factors which can be used to determine a child’s best
interests.  In the Interest of S.M., --- S.W.3d ----, 2012 WL 4381372 at *8
(Tex.App.--El Paso 2012, no pet. h.), citing
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  The determination of a child’s best interest
does not require proof of any unique set of factors, and it does not limit
proof to any specific factors.  Id.  Under Holley,
in reviewing the sufficiency of the evidence to support a best-interest
finding, courts may consider (1) the desires of the child, (2) the present and
future physical and emotional needs of the child, (3) the present and future
emotional and physical danger to the child, (4) the parental abilities of the
persons seeking custody in promoting the best interest of the child, (5) the
programs available to assist these individuals to promote the best interest of
the child, (6) the plans for the child by the individuals or agency seeking
custody, (7) the stability of the home or proposed placement, (8) acts or
omissions of the parent which may indicate the existing parent-child
relationship is not appropriate, and (9) any excuse for the parent’s acts or
omissions.  In re S.M., --- S.W.3d ----, 2012 WL 4381372 at *8, citing Holley, 544 S.W.2d at
371-72.  

1.      The desires of the child.  At the time of trial, C.H. was only eighteen
months of age and there is no evidence that he could articulate his desires.  

2.      The present and future physical and
emotional needs of the child.  C.H. has
hydroencephalitis and is a special needs child. 
As a result of his premature birth, he is behind developmentally and is
currently receiving physical therapy and speech therapy.  He will need physical therapy on an ongoing
basis.  He will also need additional
medical care.  Simply put, C.H. has
significant present and future physical needs.

3.      The present and future emotional and
physical danger to the child.  Mother
testified that C.A.’s home was not safe for C.H. because the floors were
uneven, the roof leaked, and the yard had a lot of junk cars and metal.  Mother claimed that C.A. and her husband did
not feed their pets and had starved two horses. 
C.A. had also been physically aggressive with her thirteen-year-old son
and he had hit her in the face.  Mother
had also seen C.A. and her husband yell at each other and on one occasion C.A.
threw a fax machine at him.  Mother
admitted that she had initially requested that C.H. be placed with C.A.  Mother also testified that even though C.A.
had formed a bond with C.H. she would not be allowed to visit the child if he were
placed with L.V. 

4.      The parental abilities of the persons
seeking custody in promoting the best interest of the child.  C.A. has a bond with C.H. because the family
lived with C.A. for a period of time and she had maintained contact with C.H.
after he was removed from his parents’ care. 
C.A. has participated in C.H.’s Early Child Intervention classes.  C.A.’s husband has experience caring for
small children because he ran a day care in the past.  L.V. had visited C.H. only a few times since
he had been born and L.V.’s wife had never met him.  L.V.’s wife has a Master’s degree in special
education and there are two special needs children in L.V.’s home.  

5.      Available assistance programs.   No evidence was presented regarding assistance
programs available to C.A. or L.V. 

6.      The plans for the child by the individuals
or agency seeking custody.  The
Department requested that it be named managing conservator of C.H. so that C.A.
could arrange to adopt him.  

7.      The stability of the home or proposed
placement.  There is evidence that
C.A. is a Canadian citizen.  While L.V.’s
attorney questioned C.A.’s husband, A.A., about her immigration status and
suggested that C.A. did not have a permanent green card, there is no evidence
in the record to support that assertion. 
In fact, the home study reflects that C.A. has resident status.  C.A. is not employed but A.A. is employed and
their financial situation is stable. 
They would not need any financial assistance to care for C.H. and he
would be the only special needs child in the home.  C.A. and her husband have been married since
February of 2002 and they have a stable relationship.  At the time of trial, L.V. and his wife, K.E.,
had only been married a few months.  L.V.
testified that his financial condition had improved since the home study was
completed and they could care for C.H.  He
also admitted, however, that he was behind on his child support and had not
made a payment “in some time.”  

8.      Acts or omissions of the parent which may
indicate the existing parent-child relationship is not appropriate.  The eighth factor is inapplicable in this
appeal.

9.      Any excuse for the parent’s acts or
omissions.  The ninth factor is
inapplicable in this appeal.

Having
reviewed all of the evidence under the standard for legal sufficiency, we
conclude that a reasonable trier of fact could have found that appointment of
the Department as managing conservator and placement of the child with C.A. is in
the best interest of the child.  We find
no abuse of discretion in the appointment of the Department as the managing
conservator of the child or by placing C.H. with his maternal grandmother.

We
have also reviewed all of the evidence under the factual sufficiency
standard.  The trial court had before it
conflicting evidence and diametrically opposed points of view regarding the
best interest of the child.  The trial
court’s finding on the best interest issue is not so against the great weight
and preponderance of the evidence as to be manifestly unjust.  We conclude that the trial court’s decision
is not arbitrary or unreasonable.  We
overrule Issue Two and affirm the judgment appointing the Department as
managing conservator of the child.  

 

 

October 17, 2012                                _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.











[1]  Appeals from a judgment terminating parental
rights are accelerated.  See Tex.R.App.P.
28.4.  The Texas Supreme Court has
determined that an appellate court should dispose of these appeals within 180
days after the notice of appeal is filed. 
Tex.R.Jud’l Admin.
6.2(a).  The Court appreciates the
efforts of counsel for Appellant and the Texas Department of Family and
Protective Services in filing their respective briefs in a timely manner in
this super-accelerated format.





[2]  In an opinion and judgment issued on the same
date as the opinion and judgment issued in this case, we affirmed the trial court’s
judgment terminating Mother’s parental rights. 
See C.H. v. Texas Department of
Family and Protective Services, No. 08-12-00250-CV (Tex.App.--El Paso Oct.
17, 2012).  Likewise, in a separate
opinion and judgment, we affirmed the trial court’s judgment terminating
Father’s parental rights.  See C.H. v. Texas Department of Family and
Protective Services, No. 08-12-00251-CV (Tex.App.--El Paso Oct. 17, 2012). 

 





[3]  Tex.Fam.Code
Ann. § 162.302(e)(West 2008).

 





[4]  L.V. relies
only upon the statutes that we have addressed. 
We do recognize that there is long standing authority that favors
keeping siblings together in the same household
absent clear and compelling reasons for separation.  See, e.g., Coleman v. Coleman, 109
S.W.3d 108, 112 (Tex.App.--Austin 2003, no pet.); O. v. P., 560 S.W.2d
122, 127 (Tex.Civ.App.--Fort Worth 1977, no writ); Autry v. Autry, 350 S.W.2d 233, 236 (Tex.Civ.App.--El Paso 1961, no
writ); see also Tex.Fam.Code
Ann. § 153.251(c)(West 2008)(“It is preferable for all children
in a family to be together
during periods of possession.”).  The separation of children is only one of many
factors to consider in determining the best interests of the children. Coleman,
109 S.W.3d at 113; Ditraglia v. Romano, 33 S.W.3d 886, 890 (Tex.App.--Austin
2000, no pet.).  Other factors include “[t]he
age of the children, the location of the parents, the present and future
emotional and physical needs of the children, the stability of each parent's
home, and the present and future emotional and physical danger to the
children.”  Coleman, 109 S.W.3d at
113.  Our resolution of this issue would
not change if L.V. had raised the common law arguments.