COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 C.H.,
  
                                    
 Appellant,
  
 v.
  
 TEXAS DEPARTMENT OF FAMILY
 AND PROTECTIVE SERVICES,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-12-00251-CV
  
                          Appeal from
  
 143rd District
 Court
  
 of Ward County,
 Texas
  
 (TC #
 11-07-22,655-CVW)
 
 
 
 
  
 
 
  
 
 
  
 
 


                                                                  O
P I N I O N

 

C.H. (Father) is
appealing from a judgment terminating his parental rights to his biological
child, C.H., Jr. (C.H.)[1]  We affirm.

FACTUAL SUMMARY

C.H.
was born two months premature on February 10, 2011 and was not released from
the hospital until late April 2011.  Over
the course of the next three months, Mother, Father, and C.H. lived with both
maternal and paternal grandparents at various times.  On July 21, 2011, C.H. Sr. (Father) was
changing the baby’s diaper when he heard one of the baby’s legs “pop.”  He explained that the leg simply popped when
he was holding the child by the ankles with one hand and lifting him while he
changed the diaper.  Mother, Father, the
paternal grandparents, and Father’s sister were present when the injury
occurred.  They took C.H. to Ward
Memorial Hospital and it was determined that he had a spiral break of his left
femur.  X-rays showed that the child had
three partially-healed broken ribs and he had also suffered a spiral fracture
of his other leg.  Neither parent knew
how these other bones had been broken or who caused the injuries.  C.H. was transferred from Ward Memorial
Hospital to Covenant Medical Center in Lubbock. 
According to Dr. Patterson at Covenant, all of the injuries appeared to
be non-accidental.  The Department
initiated an investigation because the parents’ explanation about the broken
leg did not comport with the nature of the injury.  On July 29, 2011, the Department filed a
petition to terminate the parental rights of both Mother and Father.  The Department also requested that it be
appointed managing conservator of the child.

The
petition alleged that Father:  (1)
knowingly placed or knowingly allowed the child to remain in conditions or
surroundings which endanger the physical or emotional well-being of the child;
(2) engaged in conduct or knowingly placed the child with persons who engaged
in conduct which endangers the physical or emotional well-being of the child;
(3) executed before or after the suit is filed an unrevoked or irrevocable
affidavit of relinquishment or parental rights; (4) constructively abandoned
the child; and (5) failed to comply with the provisions of a court order that
specifically established the actions necessary for her to obtain the return of
the child.  The child’s maternal
grandmother, C.A., and her husband, A.A., intervened in the case and sought to
be named joint managing conservators, or alternatively, possessory conservators
of the child.  The child’s maternal
grandfather, L.V., and his wife K.E., also intervened and requested that they
be named joint managing conservators.  

Shelby
Couch, the Department’s caseworker assigned to this case, testified that when
the child was brought into the hospital he was dirty as were his parents.  During the course of the Department’s
investigation, Couch learned that Mother had no prenatal care despite a family
history of premature births.  Further,
Mother and Father did not take C.H. to the doctor for his vaccinations due when
he was four months of age.  Additionally,
C.H. had missed five of his weekly physical therapy appointments.  At the conclusion of the investigation, the
Department was unable to determine whether Mother had committed physical abuse
or neglect, but it found that there was reason to believe Father had committed
physical abuse and neglect of the child. 
The Department cleared the maternal grandmother, C.A., of any
wrongdoing.  After making these
determinations, the Department offered services to the parents and Mother
agreed to schedule the child’s missed appointments with his doctors and notify
the case worker when she had taken care of that task.  Mother did not comply.  In August 2011, the child was removed from
the home and the Department was appointed temporary managing conservator of
C.H.  A service plan was created for each
parent setting forth the steps necessary to achieve reunification with the
child.  Both parents were required to
undergo a psychosocial evaluation, counseling, and parenting classes.  Father completed the required parenting classes
and a psychosocial evaluation but he did not complete MHMR testing.  Mother attended two of the required counseling
sessions and Father attended one session. 
Both parents testified that that the counselor told them that no
additional sessions were required but the counselor reported to the Department that
the parents had failed to schedule the next appointment and never completed the
counseling.  

Following
a bench trial, the court found that the Department had established the first,
second, fourth, and fifth grounds by clear and convincing evidence, and that
termination was in the child’s best interest. 
The court appointed the Department as the permanent managing conservator
of C.H. and placed him with his maternal grandmother, C.A.  The court further ordered that the maternal grandfather,
L.V., could have visitation by agreement. 
Mother, Father, and L.V. each filed notice of appeal.[2]   

SUFFICIENCY OF THE
EVIDENCE

            In Issues One and Two, Father
challenges the legal and factual sufficiency of the evidence supporting the
trial court’s finding that termination of Father’s parental rights is in the
best interest of C.H.  A court may order
termination of the parent-child relationship if the court finds by clear and
convincing evidence one of the grounds listed under Section 161.001(1) of the
Texas Family Code and that termination is in the best interest of the
child.  Tex.
Fam.Code Ann. § 161.001 (West Supp. 2012); In re J. L., 163 S.W.3d 79, 84 (Tex. 2005).  Evidence is clear and convincing if it “will
produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established.”  Tex.Fam.Code
Ann. § 101.007 (West 2008).  Due process
requires the application of the clear and convincing evidence standard of proof
in parental termination cases.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).

Standards of Review

            In conducting a legal sufficiency
review in a parental termination case, the reviewing court should consider all
the evidence in the light most favorable to the challenged finding to determine
whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.  In re J.P.B., 180 S.W.3d 570, 573 (Tex.
2005); In re J.F.C., 96 S.W.3d at 266.  To give appropriate deference to the
factfinder’s conclusions and the role of a court conducting a legal sufficiency
review, looking at the evidence in the light most favorable to the judgment
means that a reviewing court must assume that the factfinder resolved disputed
facts in favor of its finding if a reasonable factfinder could do so.  In re J.P.B.,
180 S.W.3d at 573.  A corollary to this requirement is that a
court should disregard all evidence that a reasonable factfinder could have
disbelieved or found to have been incredible. 
Id.  This does not mean that a court must
disregard all evidence that does not support the finding.  Id.  Disregarding undisputed facts that do not
support the finding could skew the analysis of whether there is clear and
convincing evidence.  Id.  Therefore,
in conducting a legal sufficiency review in a parental termination case, we
must consider all of the evidence, not just that which favors the verdict.  Id.; see City
of Keller v. Wilson, 168 S.W.3d 802, 817 (Tex. 2005).  An appellate court must defer to the factfinder’s
determinations on credibility so long as those determinations are not
themselves unreasonable.  In re J.P.B., 180 S.W.3d at 573; Southwestern
Bell Telephone Company v. Garza, 164 S.W.3d 607, 625 (Tex. 2004).

In
reviewing termination findings for factual sufficiency, a court of appeals must
give due deference to the factfinder’s findings and should not supplant the factfinder’s
determination judgment with its own.  In re H.R.M., 209 S.W.3d 105, 108 (Tex.
2006).  The court should inquire whether
the evidence is such that a factfinder could reasonably form a firm belief or
conviction about the truth of the allegations.  Id.  The reviewing court must give due
consideration to evidence that the factfinder could reasonably have found to be
clear and convincing.  In re J.F.C., 96 S.W.3d at 266.  A court of appeals should consider whether
disputed evidence is such that a reasonable factfinder could not have resolved
that disputed evidence in favor of its finding. 
Id.  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction, then the evidence is factually
insufficient.  Id.  In applying this
standard, an appellate court’s review must not be so rigorous that the only
factfindings that could withstand review are those established beyond a reasonable
doubt.  H.R.M., 209 S.W.3d at 108.  A
court of appeals should detail in its opinion why it has concluded that a
reasonable factfinder could not have credited disputed evidence in favor of the
finding.  In re J.F.C., 96 S.W.3d at 266-67. 


Best Interest

            There is a strong presumption that a
child's best interests are served by maintaining the parent-child relationship.  In the
Interest of S.M., --- S.W.3d ----, 2012 WL 4381372 at *8 (Tex.App.--El Paso
2012, no pet. h.); In the Interest of
L.M., 104 S.W.3d 642, 647 (Tex.App.--Houston [1st Dist.] 2003, no pet.).  The Supreme Court has set forth a list of
non-exclusive factors which can be used to determine a child’s best interests.  In re
S.M., --- S.W.3d ----, 2012 WL 4381372 at *8, citing Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  The determination of a child’s best interest
does not require proof of any unique set of factors, and it does not limit
proof to any specific factors.  Id.  Under Holley,
in reviewing the sufficiency of the evidence to support a best-interest
finding, courts may consider (1) the desires of the child, (2) the present and
future physical and emotional needs of the child, (3) the present and future
emotional and physical danger to the child, (4) the parental abilities of the
persons seeking custody in promoting the best interest of the child, (5) the
programs available to assist these individuals to promote the best interest of
the child, (6) the plans for the child by the individuals or agency seeking
custody, (7) the stability of the home or proposed placement, (8) acts or
omissions of the parent which may indicate the existing parent-child
relationship is not appropriate, and (9) any excuse for the parent’s acts or
omissions.  In re S.M., --- S.W.3d ----, 2012 WL 4381372 at *8, citing Holley, 544 S.W.2d at
371-72.  The same evidence of acts or
omissions used to establish grounds for termination under Section 161.001(1)
may be probative in determining the best interests of the child.  In re
S.M., --- S.W.3d ----, 2012 WL 4381372 at *8, citing In the Interest of C.H., 89 S.W.3d 17, 28 (Tex. 2002).  Termination of the parent-child relationship
is not justified when the evidence shows merely that a parent’s failure to
provide a more desirable degree of care and support of the child is due solely
to misfortune or the lack of intelligence or training, and not to indifference
or malice.  In re S.M., --- S.W.3d ----, 2012 WL 4381372 at *8, citing Clark v. Dearen, 715 S.W.2d 364,
367 (Tex.App.--Houston [1st Dist.] 1986, no writ).

1.      The desires of the child.  At the time of trial, C.H. was only eighteen
months of age and there is no evidence that he could articulate his desires.  

2.      The present and future physical and
emotional needs of the child.  Father
argues that the Department presented no evidence of C.H.’s physical and
emotional needs.  We disagree.  C.H. has hydroencephalitis and is a special
needs child.  As a result of his
premature birth, he is behind developmentally and is currently receiving
physical therapy and speech therapy.  He
will need physical therapy on an ongoing basis. 
He will also need additional medical care.  Simply put, C.H. has significant present and
future physical needs.

3.      The present and future emotional and
physical danger to the child.  Despite
C.H.’s needs, Mother and Father failed to take C.H. for five of his weekly
physical therapy appointments.  They also
failed to take him to the doctor for vaccinations.  C.H. suffered multiple non-accidental broken
bones during the twelve-week period he lived with Mother and Father following
his release from the hospital, yet both parents claimed to have been unaware of
those injuries.  The trial court was not
required to believe Father’s testimony about how the most recent broken leg
occurred or his assertions that he was unaware of the other injuries.  Further, the court could have found that Father
did not take the child to his medical care appointments because he knew about
the prior injuries and feared they would be discovered. When Mother and Father
took C.H. to the hospital, he had not been bathed and was dirty.  Even if the trial court believed Father’s assertions
that he did not intentionally harm C.H., the inability of Father to recognize
that a lack of medical care and hygiene presented a physical danger to C.H.
indicates there is a risk of future physical danger.  There is also evidence of present and future
emotional danger.  After C.H. was removed
from the home and before the parents moved to Dallas, Mother and Father visited
the child between twelve and fifteen times out of twenty available visits.  After they moved to Dallas, they did not
visit C.H. at all or communicate with the caseworker to inquire about him.  They subsequently returned to Monahans and
resumed visitation.  Father visited C.H.
six times out of ten opportunities to visit. 


4.      The parental abilities of the persons
seeking custody in promoting the best interest of the child.  There is substantial evidence that Mother and
Father failed to provide a safe and stable home for C.H.  While Father completed the parenting classes
as required by the service plan, he has shown an inability to care for
C.H.   

5.      Available assistance programs.  The
Department provided parenting classes, which Father completed, but he failed to
complete counseling or the MHMR assessment. 


6.      The plans for the child by the individuals
or agency seeking custody.  Father did
not introduce evidence of his plans for C.H.’s future other than reuniting with
and caring for him.  The Department
recommended that Father’s parental rights be terminated and that C.H. be placed
with his maternal grandmother.  

7.      The stability of the home or proposed
placement.  There is evidence that
Mother and Father cannot provide a stable home for C.H. because they frequently
move from the home of one relative to another. 
After the Department removed C.H. from the home, Mother and Father lived
with C.A. until December 2011.  When C.A.
asked them to move out of her home, Mother and Father moved to Dallas a few
days before Christmas and stayed with her father, L.V., for a short period of
time.  They subsequently moved to
Rockwall, Texas to live at her grandparents’ house.  Mother and Father moved back to Monahans in April
2012.  Mother had been unable to keep a
job for more than six weeks and Father had quit two jobs to move to a town
where he did not have a job.  At the time
of trial, Mother was working with Father at a tire shop in a job she described
as temporary.  Father testified that he
had had six jobs since C.H. had been removed from their care in August 2011.  

8.      Acts or omissions of the parent which may
indicate the existing parent-child relationship is not appropriate.  During the twelve weeks C.H. lived with
Mother and Father, he suffered multiple broken bones, including spiral breaks
of both legs.  Mother and Father insisted
they were unaware of these injuries and did not know who was responsible, but
the evidence belies these assertions. 
The trier of fact could have inferred from the evidence showing Mother
and Father failed to take C.H. for weekly physical therapy and for his
vaccinations that they were aware of the injuries and did not want them to be
discovered.  This is certainly evidence
that the parent-child relationship is inappropriate.  

9.      Any excuse for the parent’s acts or
omissions.  Mother and Father offered
various excuses for failing to take C.H. to the doctor and to complete the
service plan but those excuses were contradicted by other evidence and shown to
be unfounded.  There is no excuse for
causing a child to suffer broken ribs or spiral fractures of both legs.

Having
reviewed all of the evidence under the standard for legal sufficiency, we
conclude that a reasonable trier of fact could have formed a firm belief or
conviction that termination of Father’s parental rights is in the best interest
of the child.  The evidence is also
factually sufficient to support the challenged finding.  We overrule Issues One and Two and affirm the
judgment terminating Father’s parental rights.

 

 

October 17, 2012                                _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 











[1]  Appeals from a judgment terminating parental
rights are accelerated.  See Tex.R.App.P.
28.4.  The Texas Supreme Court has
determined that an appellate court should dispose of these appeals within 180
days after the notice of appeal is filed. 
Tex.R.Jud’l Admin.
6.2(a).  The Court appreciates the
efforts of counsel for Appellant and the Texas Department of Family and
Protective Services in filing their respective briefs in a timely manner in
this super-accelerated format.





[2]  In an opinion and judgment issued on the same
date as the opinion and judgment issued in this case, we affirmed the trial
court’s judgment terminating Mother’s parental rights.  See
C.H. v. Texas Department of Family and Protective Services, No. 08-12-00250-CV
(Tex.App.--El Paso Oct. 17, 2012). 
Likewise, in a separate opinion and judgment, we affirmed the trial
court’s judgment placing the child with C.A. 
See L.V. v. Texas Department of
Family and Protective Services, No. 08-12-00252-CV (Tex.App.--El Paso Oct.
17, 2012).