

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00202-CV
_____

IN THE INTEREST OF J.M.G., A CHILD

On Appeal from the 100th District Court
Childress County, Texas
Trial Court No. 10521, Honorable Stuart Messer, Presiding

October 27, 2016

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

J.A.C., the father of J.M.G.,[1] appeals from a final order terminating his parental rights to J.M.G.[2] The proceeding was initiated by J.M.G.'s maternal grandmother, appellee. Termination was sought under section 161.001(b)(1)(Q) of the Texas Family Code after J.A.C. was sentenced to fourteen years in prison for a felony committed prior to the conception of J.M.G. We will affirm the order of the trial court.

---

[1] To protect the child's privacy, we will refer to the father and the child by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2011); TEX. R. APP. P. 9.8(b).

[2] The parental rights of the mother of J.M.G. were terminated after she filed an affidavit of voluntary relinquishment. The mother has not appealed.

Background

In February 2014, J.A.C. pled guilty to the felony offense of burglary of a habitation. The court deferred a finding of guilt and placed J.A.C. on community supervision for a term of six years.[3] In August 2014, J.A.C.'s girlfriend became pregnant with J.M.G. Over several months, J.A.C. violated several terms and conditions of his community supervision, resulting in the State filing a motion to adjudicate J.A.C.'s guilt. In December 2014, J.A.C. was arrested and, in January 2015, was adjudicated guilty of the felony offense and sentenced to a prison term of fourteen years. J.M.G. was born in April 2015[4] and placed with his maternal grandmother, appellee.

In August 2015, appellee filed an original petition for termination of parental rights and adoption of grandchild. The court held a hearing in April 2016. J.A.C. testified, acknowledging his guilty plea, community supervision, and multiple violations of the conditions of his community supervision. He told the court he violated the conditions multiple times by using illegal drugs. He also testified J.M.G.'s mother used drugs with him before and during her pregnancy. He told the court that after learning of his girlfriend's pregnancy, he stopped using drugs, but admitted he continued to violate the terms of his community supervision by failing to report to his probation officer as required. J.A.C. also testified to the fourteen-year prison sentence he was assessed after the court adjudicated him guilty and revoked his community supervision.

---

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 (West 2015).

[4] J.A.C. submitted to a DNA paternity test, the results of which confirmed he is the father of J.M.G. He also admitted in open court he was the child's biological father.

2

Following the presentation of evidence, the trial court terminated J.A.C.'s parental rights to J.M.G. pursuant to section 161.001(b)(1)(Q) of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(b)(1)(Q) (West 2016). The court further found termination of J.A.C.'s parental rights was in the best interest of J.M.G. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

Analysis

Through his sole issue on appeal, J.A.C. challenges the sufficiency of the evidence supporting the trial court's termination of his parental rights to J.M.G. He does not challenge the evidence supporting the court's finding that termination of his parental rights is in the child's best interest. He asserts only that because the criminal conduct for which he was eventually sentenced, burglary of a habitation, occurred prior to J.M.G.'s conception, it cannot form the basis for termination of his parental rights.

The Constitution protects "[t]he fundamental liberty interest of natural parents in the care, custody, and management" of their children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). Parental rights, however, are not absolute, and courts have recognized it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve the parental rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). Clear and

3

convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d at 25-26.

The Texas Family Code permits a trial court to terminate parental rights if the petitioner proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(b)(1) and termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b) (West 2015); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Only one predicate finding under section 161.001(b)(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interests. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Thus a termination order may be affirmed if it is supported by legally and factually sufficient evidence of any statutory ground on which the trial court relied for termination, and the best interest finding. *In re E.A.G.,* 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

Under the legal sufficiency analysis, we examine all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d at 266. We disregard all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* However, we take into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.* If the record presents credibility issues, we must defer to

4

the factfinder's determinations provided they are not unreasonable. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

Section 161.001(b)(1)(Q) permits termination if the parent "knowingly engaged in criminal conduct that resulted in the parent's (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(b)(1)(Q); *In re A.V.,* 113 S.W.3d at 358 (quoting former version of subsection); *see In re H.R.M.,* 209 S.W.3d 105 (Tex. 2006) (addressing sufficiency of evidence supporting subsection Q finding).

In this case, the evidence on which the trial court relied for its subsection Q finding is undisputed. It shows: (1) J.A.C. admittedly committed a felony offense, burglary of a habitation; (2) admittedly committed numerous violations of the terms and

5

conditions of his community supervision; (3) was sentenced to fourteen years of imprisonment; and (4) fourteen years exceeds two years from the date of the filing of the petition for termination of his parental rights. The record shows J.A.C. expects to be released from prison in July 2020. He also acknowledged on the record he has never cared for J.M.G., has never had any contact with the child, and has never made any efforts or arrangements for the child's care. J.A.C. argues only that because the criminal conduct that resulted in his incarceration occurred before J.M.G.'s conception, it cannot provide sufficient evidence to support termination under section 161.001(b)(1)(Q); he does not contend the evidence supporting the court's subsection Q finding was insufficient in any other respect.

We agree with appellee that consideration of the language of subsection Q requires that we overrule appellant's contention. Appellee argues the statute's language is unambiguous, and contains no requirement that the criminal conduct leading to conviction and confinement occur after conception of the child with respect to whom rights are being terminated. Appellee is correct. Subsection Q simply does not speak to the relationship between the time of conception of the child and the time of occurrence of the criminal conduct. The Supreme Court of Texas observed in *In re A.V.,* also addressing subsection Q, that the Legislature has been clear in section 161.001 when it intends a specific time period must elapse before a particular subsection may apply to the parent's conduct. 113 S.W.3d at 360. The same can be said with respect to the sequence of events required to prove particular predicate acts under subsections of 161.001(b). *See, e.g.,* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(H), (O). Had the Legislature intended the criminal conduct required by subsection Q to

6

post-date the conception of the child, it easily could have so provided. As in *In re A.V.*, the Legislature has not expressed in subsection Q the requirement appellant posits, and we see no "indication the Legislature meant anything other than what it said." *In re A.V.,* 113 S.W.3d at 360*; see In re Lee*, 411 S.W.3d 445, 451 (Tex. 2013) (statute's plain language "is the surest guide to the Legislature's intent").

Our conclusion is supported also by the focus and aim the Supreme Court has observed in subsection Q. It noted in *In re A.V.* that the subsection "focuses on the parent's future imprisonment and inability to care for the child, not the criminal conduct that the parent committed in the past." *Id.* While the court was concerned in *In re A.V.* with a termination proceeding initiated by the State, its holding regarding the focus of subsection Q is equally applicable in this private-party termination.

Appellee also correctly points out that acts by parents prior to the birth of a child have been held sufficient to support termination of parental rights under other subsections of section 161.001. *See, e.g.,* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re S.M.,* 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.).

The evidence was legally and factually sufficient to permit the trial court to find by clear and convincing evidence J.A.C. knowingly engaged in criminal conduct that resulted in his conviction of an offense for which he was imprisoned and unable to care for J.M.G. for not less than two years from the date of filing the petition. His sole issue contending otherwise is overruled.

Conclusion

Having overruled J.A.C.'s sole issue on appeal, we affirm the final order of the trial court.

James T. Campbell
Justice