

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00765-CV

**IN THE INTEREST OF R.M.H., JR.**, I.Q.M.H., and A.S.M.H., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00330
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:          Luz Elena D. Chapa, Justice
                  Beth Watkins, Justice
                  Lori I. Valenzuela, Justice

Delivered and Filed: November 22, 2023

AFFIRMED

Appellant Y.H. appeals the trial court's order terminating her parental rights to her children, R.M.H., Jr. (born 2017), I.Q.M.H. (born 2021), and A.S.M.H. (born 2021).[1] Y.H. argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interest. We affirm the trial court's order.

### BACKGROUND

In March of 2022, the Texas Department of Family and Protective Services removed the children from Y.H.'s care due to "[s]ubstance abuse [and] domestic violence." At the time of their removal, R.M.H., Jr. was four years old and I.Q.M.H. and A.S.M.H., who are twins, were two

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

months old. The Department obtained temporary managing conservatorship over the children, placed them in foster care, and filed a petition to terminate the parental rights of both Y.H. and the children's father, R.M.C. The Department also created a family service plan, and the caseworker identified the most important requirements for Y.H. as "[p]sychological, individual therapy, parenting class, . . . the substance abuse assessment treatment and the domestic violence." The Department ultimately pursued termination of Y.H.'s parental rights.

Sixteen months after removal, the trial court held a one-day bench trial. The trial court heard testimony from two witnesses—Helen Goff, who was the Department caseworker assigned to this case, and Y.H. On July 31, 2023, the trial court signed an order terminating Y.H.'s parental rights pursuant to section 161.001(b)(1)(N), (O), and (P) and its finding that termination of Y.H.'s parental rights was in the children's best interest. Y.H. timely appealed.[2]

## ANALYSIS

Y.H. challenges the legal and factual sufficiency of the trial court's finding that termination is in the children's best interest. Because she does not challenge the trial court's findings under sections (N), (O), and (P), we must accept the validity of those findings. *See In re A.V.*, 113 S.W.3d 355, 361–62 (Tex. 2003); *In re S.J.R.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied); *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P).

### *Applicable Law and Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d at 683 (internal quotation marks omitted). "As a result, appellate courts

---

[2] The trial court also terminated R.M.C.'s parental rights. He is not a party to this appeal.

must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Y.H.'s parental rights and that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d at 362. "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. A factual sufficiency review requires us to consider the entire record to determine whether the evidence that is contrary to a finding would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *See id.* The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346. This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g., In re R.S.-T.*, 522 S.W.3d 92, 97

(Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Furthermore, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, we presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

### *Application*

The trial court found that termination was warranted under section 161.001(b)(1)(P), which permits termination if a parent "used a controlled substance . . . in a manner that endangered the health or safety of the child, and" either failed to complete a court-ordered substance abuse program or continued to use after completing such a program. *See* TEX. FAM. CODE § 161.001(b)(1)(P). Because Y.H. has not challenged that finding, we must accept its validity. *In re A.V.*, 113 S.W.3d at 361–62. "A parent's illegal drug use supports a finding that termination of the parent-child relationship is in the best interest of the child." *In re A.M.O.*, No. 04-17-00798-CV, 2018 WL 2222207, at *2 (Tex. App.—San Antonio, May 16, 2018, no pet.) (mem. op). "The factfinder can give 'great weight' to the 'significant factor' of drug-related conduct" in determining a child's best interest. *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see also* TEX. FAM. CODE § 263.307(b)(8). This is because, as we have previously recognized, "drug use can destabilize the home and expose children to physical and emotional harm if not resolved." *In re A.L.S.*, 660 S.W.3d 257, 275–76 (Tex. App.—San Antonio 2022, pet. denied).

Goff testified that the Department removed the children due to substance abuse issues and that Y.H. "recognizes that she has a [drug] problem[.]" She explained that Y.H. was unsuccessfully discharged from SAFP, which Goff described as a "[s]ubstance abuse program for felons in the State of Texas." Based on the unsuccessful discharge from the SAFP program, the trial court could have reasonably inferred that Y.H.'s substance abuse remained unresolved. *See D.H. v. Tex. Dep't*

*of Fam. & Protective Servs.*, 652 S.W.3d 54, 64 (Tex. App.—Austin 2021, no pet.); *see also* TEX. FAM. CODE § 263.307(b)(8).

Goff also testified that Y.H. did not complete her service plan. In determining a child's best interest, the trial court is permitted to consider whether a parent complied with a service plan. *See In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) ("Non-compliance with a service plan is probative of a child's best interest."). The trial court could have reasonably inferred that Y.H. lacked parental abilities, including the motivation to seek out and use available resources, based on her lack of engagement with and failure to commit to the service plan. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE § 263.307(b)(10) (reviewing willingness/ability of child's family to seek out/accept/complete counseling services and to cooperate with/facilitate an appropriate agency's close supervision as part of best-interest determination), *and* TEX. FAM. CODE § 263.307(b)(11) (reviewing willingness/ability of child's family to effect positive environmental/personal changes in a reasonable time to decide child's best interest). This is especially true where, as here, the evidence showed: (1) domestic violence was one of the "main issues" that led to the children's removal; and (2) Y.H. did not engage in the portions of her service plan that were intended to address domestic violence. *See* TEX. FAM. CODE § 263.307(b)(7) (trial court may consider "whether there is a history of abusive or assaultive conduct by the child[ren]'s family or others who have access to the child[ren]'s home"); *In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at \*7 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) (concluding parents' failure to address domestic violence supported best interest finding).

Additionally, Y.H. was incarcerated for much of this case. A parent's incarceration, without more, will not support a termination order. *See In re A.M.O.*, 2018 WL 2222207, at *3. Nevertheless, incarceration is an appropriate factor for a trial court to consider in evaluating a child's best interest. *See id.*; *see also Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533–34 (Tex. 1987). This is because "criminal conduct and incarceration affects a parent's life and the ability to parent, thereby subjecting a child to potential emotional and physical danger." *In re S.A.M.*, No. 04-18-00607-CV, 2019 WL 573469, at *5 (Tex. App.—San Antonio Feb. 13, 2019, pet. denied) (mem. op). Furthermore, routinely subjecting a child to the probability that she will be left alone because her parent is in jail endangers the child's physical and emotional well-being. *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.—El Paso 2012, no pet.).

Here, the evidence showed Y.H. "was incarcerated shortly after the case began. And she's pretty much been in jail or prison during the length of this case." She was "[b]riefly" out of jail in March of 2023, but she was rearrested shortly thereafter. She remained in jail at the time of trial and testified via Zoom from the Kendall County Jail. Goff could not remember why Y.H. was originally incarcerated, but she knew "this last one was a DWI. [Y.H.] was in the [SAFP] program, so it was drug related." *See* TEX. FAM. CODE § 263.307(b)(8). She also testified that Y.H. had not yet been tried for the charges that led to her most recent incarceration. Y.H. testified that she did not know when she would be released:

> My probation officer did—does want me to go to prison. But at the end of the day, it's up to the Judge. They can reinstate me and let me go. There's a lot of possibilities that can happen to me. . . . I don't know what's going to happen right now.

This evidence is relevant to Y.H.'s ability to provide a stable home for the children and her willingness and ability "to effect positive environmental and personal changes within a reasonable period of time[.]" *See* TEX. FAM. CODE § 263.307(b)(11); *In re A.M.O.*, 2018 WL 2222207, at *3.

The trial court also found that Y.H. constructively abandoned the children. *See* TEX. FAM. CODE § 161.001(b)(1)(N). A parent's failure to visit a child can support a finding that termination is in the child's best interest. *See, e.g.*, *In re E.X.G.*, No. 04-18-00659-CV, 2018 WL 6516057, at *2 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.); *see also Holley*, 544 S.W.2d at 372 (trial court may consider "acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one"). Goff testified that Y.H. "[had] a visit or two with the children" at the outset of this case but had not seen or contacted them since. She opined that Y.H. "has not been around the children for well over a year, so there's no bond. There's no relationship with them at this point." Goff also testified that even though Y.H. was incarcerated, she could have sent letters to the children and did not do so. In contrast, Y.H. testified she did not know she was allowed to write letters to her children and did not "have addresses where they're at" to send them letters. The trial court had the sole authority to resolve this conflict in the evidence. *See In re M.V.*, No. 04-22-00110-CV, 2022 WL 2334536, at *4 (Tex. App.—San Antonio June 29, 2022, no pet.) (mem. op.).

Y.H. testified that she believed her family members could care for her children until she was released. Goff testified, however, that she "checked into several family members" that Y.H. had suggested as possible placements, including Y.H.'s mother and sister, and those placements "just did not work out" for various reasons. She specifically noted that while she "had a really wonderful conversation with" one of Y.H.'s relatives, that relative "was very clear that she wanted to be temporary help for the children. She was not able to be long-term." This evidence is relevant to whether "an adequate social support system consisting of an extended family and friends" was available to the children and Y.H. TEX. FAM. CODE § 263.307(b)(13).

Goff testified that the children had been in the same foster placement since May of 2022, they were bonded to the foster family, and the placement was meeting their physical and emotional

needs. She also testified that the children's foster parents had "financial resources," stable employment, and a stable residence, were "very loving toward" the children, and were willing to provide a long-term home for them. She explained the foster mother "rearranged her job and her schedule to create an environment where [R.M.H., Jr.] could do half home schooling and half in person[.] . . . [S]he's done an amazing job in taking care of [R.M.H., Jr.] and the girls." This testimony is relevant to the foster parents' parental abilities, the stability of their home, and the Department's plans for the children. *Holley*, 544 S.W.2d at 371–72; *see also* TEX. FAM. CODE § 263.307(a).

After reviewing this evidence under the applicable standards of review, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of Y.H.'s parental rights was in the children's best interest. *In re J.F.C.*, 96 S.W.3d at 266; *Davis v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-11-00314-CV, 2012 WL 512674, at *9 (Tex. App.—Austin Feb. 15, 2012, no pet.) (mem. op.). We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Y.H.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice